952 P.2d 167 (1998)
134 Wash.2d 588
The STATE of Washington, Respondent,
v.
Martin Joseph MORLEY, Appellant.
The STATE of Washington, Appellant,
v.
David Lee JAMES, Respondent.
Nos. 62662-6, 65252-0.
Supreme Court of Washington, En Banc.
Argued November 19, 1997.
Decided March 12, 1998.
*169 Snohomish County Public Defender Association, Charles Dold, Everett, for Appellant Morley.
Washington Appellate Project, Richard Tassano, Lisa D. Ridgedale, Seattle, for Respondent David Lee James.
Jim Krider, Snohomish County Prosecutor, S. Aaron Fine, David Thiele, Deputies, Everett, for Respondent State of Washington.
Norm Maleng, King County Prosecutor, Pamela Mohr, Deborah A. Dwyer, Deputies, Seattle, for Appellant State of Washington.
*168 DOLLIVER, Justice.
These consolidated cases question whether a general court-martial qualifies as a prior criminal conviction under the Sentencing Reform Act of 1981(SRA) (RCW 9.94A). We find Defendants' general courts-martial do constitute prior criminal convictions. We also find Defendants' prior court-martial convictions qualify as "strikes" under Initiative 593 (1-593), the Persistent Offender Accountability Act. Laws of 1994, ch. 1.

State v. Morley
Facing a potential life sentence under I-593, Defendant Morley pleaded guilty to three counts of second degree child molestation. The sentencing court found Morley's current conviction counted as a third strike, and it sentenced him to life in prison as a persistent offender. The sentencing order was signed by the judge on January 27, 1995. The second strike was a 1989 conviction for first degree child molestation. The first strike was a 1982 military court-martial for robbery and assault.
In the 1982 court-martial, Morley was tried and found guilty by a military judge. Pursuant to 10 U.S.C. § 860, his conviction and sentence were then reviewed by the convening authority. Morley then appealed under 10 U.S.C. § 866, and a three-judge panel from the United States Army Court of Military Review affirmed his conviction. Finally, Morley petitioned the United States Court of Military Appeals for grant of review, which was denied. Morley challenges the use of this 1982 court-martial in sentencing for his current conviction.

State v. James
Defendant James pleaded guilty to first degree burglary with sexual motivation. At the time of the guilty plea, the State claims it was aware of just one prior strike in James' criminal historya 1981 Pierce County conviction for first degree assault with the intent to commit rape. James' sentencing range, given his perceived criminal history of one prior conviction, was 26-to-34 months.
The burglary victims were upset with the low sentencing range for James' offense, so they hired a law firm to represent them in urging the court to impose an exceptional sentence on James. It appears one of the victim's attorneys discovered James had been *170 court-martialed in 1979 for sodomy, robbery and attempted rape. After this discovery, the State filed a motion requesting the court to declare the court-martial as a prior strike and sentence James to life in prison as a persistent offender. In the alternative, the State urged the court to vacate James' guilty plea, without precluding the State from seeking a persistent offender status should James subsequently be tried and convicted.
The trial court determined the court-martial counted toward James' offender score under the SRA, but the court prohibited the State from seeking a life sentence under I-593, stating:
[I]t would be unconscionable for the State to do so because at the time the parties entered into plea negotiations neither contemplated that the military Court-Martial conviction was a "prior conviction" for purposes of sentencing under the Sentencing Reform Act. The Court makes no finding that the King County Prosecuting Attorney's Office knew of the existence of the prior Court-Martial conviction of the defendant.
Clerk's Papers at 125. The court determined James' new sentencing range, with his court-martial factored into the offender score, was 41-to-52 months. The court then found an exceptional sentence was justified, and on July 14, 1995, James was sentenced to 108 months in prison. The State appeals, arguing it should be allowed to seek a life sentence for James under I-593. James cross-appeals, claiming courts-martial are unconstitutional and cannot be counted as prior strikes under I-593 or used to increase his offender score.
The record before us reveals the details of James' 1979 court-martial. He pleaded guilty to charges of sodomy, robbery, and attempted rape. After his conviction, he submitted a written request for appellate defense counsel, which was granted. The convening authority reviewed his court-martial and modified the sentence. James then appealed, and the United States Army Court of Military Review affirmed the conviction but further modified the sentence. James was given written notice of his right to petition the United States Court of Military Appeals for grant of review, but the record does not show any petition being filed.
As a preliminary matter, we must limit the scope of our holding. There are four different levels of courts-martial described in the Uniform Code of Military Justice (U.C.M.J.). 10 U.S.C. §§ 801-941. The lowest level of court-martial is commonly referred to as an "Article 15" proceeding. 10 U.S.C. § 815 (entitled "Commanding officer's non-judicial punishment"). The next three levels of proceedings are summary courts-martial, special courts-martial, and general courts-martial. 10 U.S.C. § 816. Both Defendants in these cases were tried by general courts-martial, so we restrict our analysis solely to general courts-martial. Our use of the term "court-martial" throughout this decision should be read as encompassing only general courts-martial, unless otherwise noted.

First Issue: Are courts-martial counted under the SRA?
This first issue addresses the general, statutory question of whether a court-martial may constitute part of an offender's criminal history for sentencing purposes. This statutory analysis has three aspects. First we must look at the definitions of "conviction" and "criminal history" in the SRA to see if those definitions include courts-martial. Then we will question whether a court-martial may count toward a defendant's offender score under RCW 9.94A.360. Finally, we will look at I-593 to determine if a court-martial may qualify as a prior strike.
RCW 9.94A.030 defines many terms used throughout the SRA. Defendants claim their courts-martial do not meet the statutory definition of "conviction." RCW 9.94A.030(9). That subsection provides:
"Conviction" means an adjudication of guilt pursuant to Titles 10 or 13 RCW and includes a verdict of guilty, a finding of guilty, and acceptance of a plea of guilty.
RCW 9.94A.030(9). Our discussion will focus on Title 10, since Title 13 involves juvenile proceedings, which are not at issue in these consolidated cases.
Morley was court-martialed and found guilty by a military judge. James pleaded *171 guilty to the crimes for which he was court-martialed. Neither Defendant challenges the "guilty" aspect of his proceeding; rather, Defendants claim their courts-martial are not convictions pursuant to Title 10.
Webster's Third New International Dictionary (1986) defines "pursuant to" as "in the course of carrying out: in conformance to or agreement with: according to...." Webster's at 1848. Defendants claim a foreign judgment does not qualify as a conviction under the SRA unless the judgment conforms with the criminal procedures set out in Title 10. Under Defendants' interpretation, before a sentencing court can consider an out-of-state criminal judgment, it has to sift through all of the foreign jurisdiction's procedural statutes and compare them to Title 10. The out-of-state judgment counts as a conviction only if the procedures in the out-of-state jurisdiction conform with Washington's criminal procedures. Otherwise, the foreign judgment cannot be used against the defendant in sentencing.
We agree the definition of RCW 9.94A.030(9) appears plain and unambiguous on its face. It states a conviction is an adjudication of guilty pursuant to Titles 10 and 13 RCW. While it makes sense to apply this definition to convictions from this state, it would be absolutely unworkable to require out-of-state convictions to comply with Washington criminal procedure before allowing the out-of-state convictions to be included in a defendant's criminal history. Nothing in the SRA states or implies that a sentencing court must conduct the tedious task of comparing out-of-state criminal procedures to in-state procedures. When we look to some of the leading authorities on the SRA, David Boerner, Sentencing in Washington (1985); State of Wash. Sentencing Guidelines Comm'n, Adult Sentencing Guidelines Manual (1996); and State of Wash. Sentencing Guidelines Comm'n, Report to the Legislature (1983), we find no mention of a sentencing court having to conduct such a ridiculous inquiry.
Title 10 RCW contains over three dozen chapters concerning a wide range of matters, including the following list of chapters which would probably be implicated in every criminal proceeding:
RCW 10.16 Preliminary hearings.
RCW 10.19 Bail and appearance bonds.
RCW 10.25 Jurisdiction and venue.
RCW 10.31 Warrants and arrests.
RCW 10.40 Arraignment.
RCW 10.46 Superior court trial.
RCW 10.52 WitnessesGenerally.
RCW 10.58 Evidence.
RCW 10.61 Verdicts.
RCW 10.64 Judgments and sentences.
Additionally, RCW 10.58 arguably incorporates our Rules of Evidence, and our Criminal Rules of Procedure may also be implicated by these chapters, thereby requiring a sentencing court to review those court rules from other jurisdictions as well. We cannot believe any state's procedures and court rules would fully comply with all of Washington's rules and statutes of criminal procedure. If we required prior out-of-state convictions to conform to Washington procedures before allowing those convictions to be counted under the SRA, every single out-of-state conviction would be excluded from consideration. Such a result is clearly contrary to the purposes of the SRA.
The Legislature intended sentencing courts to include out-of-state convictions when making sentencing calculations under the SRA. Numerous SRA definitions expressly include out-of-state crimes that are comparable to in-state crimes. See, e.g., RCW 9.94A.030(12)(a) ("[c]riminal history" includes out-of-state convictions); RCW 9.94A.030(18)(c) ("[d]rug offense" includes comparable out-of-state or federal convictions); RCW 9.94A.030(19)(b) ("[e]scape" includes comparable out-of-state or federal convictions); RCW 9.94A.030(20)(b) ("[f]elony traffic offense" includes comparable out-of-state or federal convictions); RCW 9.94A.030(23)(u) ("[m]ost serious offenses" include comparable out-of-state or federal convictions). The offender score statute, RCW 9.94A.360, uses out-of-state and federal convictions in the scoring of a defendant's offender score. RCW 9.94A.360(3). Since the Legislature obviously intended out-of-state convictions to be considered under the SRA, we cannot read RCW 9.94A.030(9) in a *172 way which would exclude every out-of-state conviction from a defendant's criminal history.
Our refusal to apply the definition of "conviction" to out-of-state cases does not ignore the Legislature's statutory directives. The Legislature declared the statutory definitions in RCW 9.94A.030 should not be blindly applied: "Unless the context clearly requires otherwise, the definitions in this section apply throughout this chapter." RCW 9.94A.030 (emphasis added). The Legislature's expressed desire for out-of-state convictions to be considered under the SRA requires us to ignore the reference in RCW 9.94A.030(9) to Title 10 RCW. The reference to Title 10 only makes sense within the context of in-state convictions. The application of Title 10 to out-of-state convictions would effectively result in all out-of-state convictions being excluded from consideration under the SRA.
Since 1984, when the SRA became effective (RCW 9.94A.905), many defendants have had their offender scores increased because of prior out-of-state or federal convictions. We cannot find a single reported case wherein the sentencing court imposed the procedural requirements of Title 10 upon out-of-state convictions. If we adopted Defendants' reading of RCW 9.94A.030(9), our holding would apply retroactively to the date the SRA was enacted. In re Personal Restraint of Johnson, 131 Wash.2d 558, 568, 933 P.2d 1019 (1997) ("Once the Court has determined the meaning of a statute, that is what the statute has meant since its enactment."). Under Defendants' argument, it would appear the court system has applied the SRA incorrectly for nearly 14 years when out-of-state convictions were included in a defendant's criminal history. If we adopted Defendants' position, every single prisoner with out-of-state prior convictions would potentially have a cause for post-conviction relief.
We find Defendants' courts-martial qualify as convictions under the SRA. As mentioned above, Morley was found guilty by a military judge in a court-martial, and James pleaded guilty to the crimes for which he was court-martialed. These proceedings are convictions which should be considered by sentencing judges. See State v. Aronson, 82 Wash.App. 762, 919 P.2d 133 (1996) (holding courts-martial count toward defendant's offender score); State v. Duke, 77 Wash.App. 532, 536, 892 P.2d 120 (1995) (implying in dicta that courts-martial are a part of a defendant's criminal history); cf. State v. Martz, 8 Wash.App. 192, 196, 504 P.2d 1174 (1973) (court-martial is a criminal conviction which can be used to attack a defendant's credibility).
We now turn to the SRA's general definition of the phrase, "criminal history." Neither I-593 nor the offender score statute, RCW 9.94A.360, actually uses the phrase, but both use similar language in referring to past convictions. See RCW 9.94A.360(1); RCW 9.94A.030(27)(a)(ii); see also State v. Villegas, 72 Wash.App. 34, 36, 863 P.2d 560 (1993) ("The offender score is based on prior criminal history, RCW 9.94A.030(12), and is calculated pursuant to RCW 9.94A.360."). Criminal history is defined as "the list of a defendant's prior convictions, whether in this state, in federal court, or elsewhere." RCW 9.94A .030(12)(a) (1996). Defendants dispute whether their courts-martial qualify as convictions from federal court or elsewhere.
James argues the term "elsewhere" is ambiguous, and the rule of leniency requires this court to hold the term fails to encompass courts-martial. Elsewhere is not defined in the SRA, but the term could hardly be considered ambiguous. Even Webster's Third International Dictionary (1986) contains just one definition for the term: "in or to some or any other place." Webster's at 737. The term is all-encompassing and it contains no restrictions. Elsewhere reaches all foreign convictions, whether from other state courts, federal courts, military courts, and perhaps even courts in foreign countries. See, e.g., State v. Herzog, 48 Wash. App. 831, 740 P.2d 380 (1987) (holding a West German conviction by a two-person jury was unconstitutional on its face and could not be considered as criminal history, thereby implying the foreign conviction, but for its unconstitutionality, would have counted as criminal history). The term, out-of-state, is equally broad in its scope. Villegas, 72 Wash.App. at 37, 863 P.2d 560 ("[T]he term `out-of-state' convictions, as *173 used in RCW 9.94A.360(3), encompasses all non-Washington convictions, including federal convictions."). We hold courts-martial are included in the SRA's reference to out-of-state convictions and convictions elsewhere. Courts-martial, as convictions from elsewhere, are included in a defendant's criminal history.
A court-martial unambiguously constitutes a conviction from elsewhere, but it is less clear whether a court-martial is a federal conviction. The definition of criminal history in RCW 9.94A.030(12)(a) (1991) lists both federal convictions and convictions from elsewhere. The definition of a persistent offender in RCW 9.94A.030(27)(a)(ii) only discusses in-state convictions and convictions from elsewhere. When Defendants were sentenced, the offender score statute only mentioned out-of-state convictions. Former RCW 9.94A.360(3) (since amended by Laws of 1995, ch. 316, § 1). Any possible distinction between federal and out-of-state convictions has no impact on our analysis of the issues in this case; therefore, we decline to rule on the question of whether a court-martial may properly be considered a federal conviction under the SRA.
Having determined courts-martial are included in a defendant's criminal history, RCW 9.94A.360 must be examined. The first three subsections of RCW 9.94A.360 set out the general rules for when prior convictions must be included in a defendant's offender score.
RCW 9.94A.360(1) states a prior conviction is one which existed before the date of sentencing for the offense for which the defendant's offender score is currently being computed. As we held above, a court-martial is a conviction. Defendants' court-martial convictions existed before the sentencing proceedings on their current offenses, so they are "prior convictions" under RCW 9.94A.360(1).
RCW 9.94A.360(2) (1996) sets forth when various classes of crimes in a defendant's history must be included in the defendant's offender score. Prior convictions for class A felonies and sex offenses are always included in the offender score. Prior class B felony convictions, other than sex offenses, "shall not be included in the offender score, if since the last date of release from confinement ... the offender had spent ten consecutive years in the community without being convicted of any felonies." Former RCW 9.94A.360(2) (since amended by Laws of 1995, ch. 316, § 1, and Laws of 1997, ch. 338, § 5). Class C prior felony convictions, other than sex offenses, wash out after five years. RCW 9.94A.360(2). This subsection contains no language which operates to exclude courts-martial from consideration; the only consideration under this subsection is whether the prior conviction is old enough to wash out.
At the time both Defendants were sentenced, RCW 9.94A.360(3) provided:
Out-of-state convictions for offenses shall be classified according to the comparable offense definitions and sentences provided by Washington law.
Former RCW 9.94A.360(3). This subsection requires the sentencing court to make the factual determination of whether the out-of-state conviction is comparable to an in-state conviction. Once an out-of-state conviction is classified as the comparable Washington offense, the sentencing court must then determine if the conviction would wash out under RCW 9.94A.360(2) (1996). Nothing in RCW 9.94A.360(3) excludes courts-martial from being considered by the sentencing court. If the court-martial is comparable to a Washington crime, it may be considered.
We find, as a statutory matter, courts-martial may be included in a defendant's offender score once the factual issues whether the particular conviction washes out, and whether it is comparable to a Washington offenseare resolved. See also State v. Aronson, 82 Wash.App. 762, 919 P.2d 133 (1996) (affirming use of defendant's prior court-martial for indecent liberties in calculating the offender score); cf. State v. Duke, 77 Wash.App. 532, 535-36, 892 P.2d 120 (1995) (deciding defendant's court-martial was not comparable to any Washington offense, thereby precluding its consideration under RCW 9.94A.360).
Reading the SRA to include courts-martial in a defendant's offender score is consistent with the purposes of the Act. The *174 Act was designed, in part, to "[e]nsure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history." RCW 9.94A.010(1) (emphasis added). The purpose of the offender score statute "is to ensure that defendants with equivalent prior convictions are treated `the same way, regardless of whether their prior convictions were incurred in Washington or elsewhere.'" Villegas, 72 Wash.App. at 38-39, 863 P.2d 560 (quoting State v. Weiand, 66 Wash.App. 29, 34, 831 P.2d 749 (1992)). Under our reading of the offender score statute and the general SRA definitions, a defendant who was convicted of rape in a military court-martial is treated the same as one who was convicted of rape in any other jurisdiction.
We now turn to the final statutory analysis of whether a court-martial may be considered under I-593, the Persistent Offender Accountability Act. I-593, also known as the "three strikes and you're out" law, was approved in 1993 by an overwhelming majority of voters in this state. State v. Thorne, 129 Wash.2d 736, 746, 921 P.2d 514 (1996). The operative portions of the law are codified at RCW 9.94A.030(23) (definition of "[m]ost serious offense"), RCW 9.94A.030(27) (definition of "[p]ersistent offender"), and RCW 9.94A.120(4). The operation of RCW 9.94A.120(4) is straightforward: If the sentencing court finds a defendant is a persistent offender, the court must sentence the defendant to life in prison without the possibility of parole.
At the time both Defendants pleaded guilty to their current offenses, a persistent offender was defined as an offender who is convicted of a most serious offense, and who has two prior convictions, in this state or elsewhere, for crimes which would be most serious offenses under Washington law, and which would be included in the offender score under RCW 9.94A.360. RCW 9.94A.030(27)(a). The definition of persistent offenders now includes a separate subsection qualifying certain sex offenders as persistent offenders after just two strikes, but the sex offender subsection was not enacted until after Defendants were sentenced. See Laws of 1996, ch. 289.
Application of the persistent offender definition can be broken down into several steps. After a defendant has been convicted in this state of a most serious offense, RCW 9.94A.030(27)(a)(i), four more elements must be present for a defendant to be declared a persistent offender: (1) The defendant must have been previously convicted on at least two separate occasions, (2) in this state or elsewhere, (3) of felonies that, under the laws of this state, would be considered most serious offenses (defined in RCW 9.94A.030(23)), and (4) would be included in the offender score under RCW 9.94A.360. RCW 9.94A.030(27)(a)(ii).
The first two elements require Defendants to have been previously convicted as offenders on at least two separate occasions in this state or elsewhere. As we held above, we find courts-martial are convictions from elsewhere. This holding stems from the general definitions in the SRA, and those definitions also apply within the context of I-593. These first two elements are present in these consolidated cases.
Under the third element of the persistent offender definition, the prior convictions must involve "felonies that under the laws of this state would be considered most serious offenses...." RCW 9.94A.030(27)(a)(ii). Determining whether a court-martial is comparable to a most serious offense requires a factual analysis of the particular court-martial involved in each case. We conduct this fact-specific inquiry under the second issue of this decision. As a statutory matter, if a court-martial is comparable to a most serious offense under Washington laws, the third element will be present. This analysis is supported by the definition of most serious offenses, which includes "any federal or out-of-state conviction for an offense that under the laws of this state would be a felony classified as a most serious offense under this subsection." RCW 9.94A.030(23)(u); State v. Mutch, 87 Wash.App. 433, 436, 942 P.2d 1018 (1997).
The last element of a persistent offender status states the prior convictions must "be included in the offender score under RCW 9.94A.360." RCW 9.94A.030(27)(a)(ii). As we held above, a court-martial may be considered *175 under RCW 9.94A.360 if the court-martial is comparable to a Washington offense and the conviction does not wash out. Once the factual requirements are met, then a court-martial counts under RCW 9.94A.360. If the court-martial is included in the offender score, then the fourth element of a persistent offender status is present.
In conclusion, we find a court-martial can potentially qualify as a prior strike, thereby elevating a defendant to the status of a persistent offender. We find no statutory language which operates to exclude courts-martial from consideration under I-593. Just as a court-martial constitutes part of a defendant's criminal history, and may be included in the defendant's offender score, we find the court-martial also may be considered when determining whether the defendant qualifies as a persistent offender.
Including courts-martial within the scope of the Persistent Offender Accountability Act is consistent with the intent of the voters who approved the law. The "[f]indings and intent" section of I-593 states in part:
(1) The people of the state of Washington find and declare that:
(a) Community protection from persistent offenders is a priority for any civilized society.
(b) Nearly fifty percent of the criminals convicted in Washington state have active prior criminal histories.
(c) Punishments for criminal offenses should be proportionate to both the seriousness of the crime and the prior criminal history.

(d) The public has the right and the responsibility to determine when to impose a life sentence.
(2) By sentencing three-time, most serious offenders to prison for life without the possibility of parole, the people intend to:
(a) Improve public safety by placing the most dangerous criminals in prison.

(b) Reduce the number of serious, repeat offenders by tougher sentencing.

RCW 9.94A.392 (emphasis added). These findings do not support Defendants' efforts to distinguish between court-martial convictions and other criminal convictions. A defendant's repeat offender status does not depend on where the defendant's prior criminal acts occurred. The status of a repeat offender hinges on the substance of a defendant's prior criminal acts: Are the defendant's prior convictions, regardless of venue or jurisdiction, comparable to most serious offenses in this state? A defendant who commits a serious crime while under jurisdiction of a military court is no less a repeat offender than one who commits the same offense in another state. Allowing courts-martial to be considered under I-593 ensures the equal treatment of all defendants and satisfies the public's desire to protect society from repeat, most serious offenders.

Second Issue: Are Defendants' courts-martial comparable to Washington offenses?
This issue has two aspects. First, it must be determined if Defendants' courts-martial, as a factual matter, are included in their offender scores under RCW 9.94A.360. It must then be determined whether their particular courts-martial are comparable to most serious offenses. Both analyses require a comparison of the foreign crimes to Washington offenses.
To determine if a foreign crime is comparable to a Washington offense, the court must first look to the elements of the crime. State v. Wiley, 124 Wash.2d 679, 684, 880 P.2d 983 (1994) (citing State v. Franklin, 46 Wash.App. 84, 729 P.2d 70 (1986), rev'd on other grounds sub nom. State v. Dunaway, 109 Wash.2d 207, 743 P.2d 1237, 749 P.2d 160 (1987)); see also State v. Mutch, 87 Wash.App. 433, 437, 942 P.2d 1018 (1997). More specifically, the elements of the out-of-state crime must be compared to the elements of Washington criminal statutes in effect when the foreign crime was committed. Mutch, 87 Wash.App. at 437, 942 P.2d 1018 (citing State v. Luckett, 73 Wash.App. 182, 187-88, 869 P.2d 75, review denied, 124 Wash.2d 1015, 880 P.2d 1005 (1994)). If the foreign conviction is comparable to a Washington crime, it counts toward the offender score as if it were the equivalent Washington offense. If the elements are not identical, or *176 if the foreign statute is broader than the Washington definition of the particular crime,
the sentencing court may look at the defendant's conduct, as evidenced by the indictment or information, to determine whether the conduct would have violated the comparable Washington statute. State v. Duke, 77 Wash.App. 532, 535, 892 P.2d 120 (1995).
Mutch, 87 Wash.App. at 437, 942 P.2d 1018. See also State v. McCorkle, 88 Wash.App. 485, 495, 945 P.2d 736 (1997) ("The key inquiry is under what Washington statute could the defendant have been convicted if he or she had committed the same acts in Washington.") (emphasis added). While it may be necessary to look into the record of a foreign conviction to determine its comparability to a Washington offense, the elements of the charged crime must remain the cornerstone of the comparison. Facts or allegations contained in the record, if not directly related to the elements of the charged crime, may not have been sufficiently proven in the trial.
Defendant Morley was court-martialed for robbery, conspiracy to rob, and assault with intent to rob. The court-martial order lists five charges, two of which were dismissed, and three of which the military judge found Morley guilty. One of the convictions was for violation of the U.C.M.J. article 122, 10 U.S.C. § 922. Article 122 sets out the crime of robbery, and the elements of the crime are as follows:
Any person ... who with intent to steal takes anything of value from the person or in the presence of another, against his will, by means of force or violence or fear of immediate or future injury to his person or property ..., is guilty of robbery and shall be punished as a court-martial may direct.
10 U.S.C. § 922. The elements of the court-martial offense are nearly identical to the definition of robbery in this state:
A person commits robbery when he unlawfully takes personal property from the person of another or in his presence against his will by the use or threatened use of immediate force, violence, or fear of injury to that person.... Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial.
RCW 9A.56.190. In this state a person commits second degree robbery, a class B felony, if the robbery does not involve bodily harm or a deadly weapon. RCW 9A.56.210. The elements for article 122 robbery are comparable to Washington's second degree robbery, and the trial court found the same:
The second issue, which wasn't really contested, is that the crime of which the defendant was convicted is clearly a crime which qualifies for consideration under the Washington statutes and Initiative 593. It is a second degree robbery by all counts, by all descriptions and by all actions, and qualifies as such.
Verbatim Report of Proceedings at 60 (Jan. 27, 1995). As observed by the trial court, Morley did not contest the trial court's factual finding, nor has Morley challenged this finding in his appellate brief.
Class B felonies, other than sex crimes, are not considered in the offender score if they have washed out. RCW 9.94A.360(2) (1996). If Morley had lived in the community for 10 years after serving his time for the court-martial, the court-martial conviction would wash out and would not be included in his offender score. The record does not disclose how long Morley was imprisoned on the court-martial conviction, but he was convicted in 1989 for first degree child molestation. This 1989 conviction occurred just seven years after his court-martial, thereby preventing the court-martial from washing out. The court-martial, being comparable to a class B felony, shall be included in the offender score. RCW 9.94A.360(2) (1996). Second degree robbery is also classified as a most serious offense. RCW 9.94A.030(23)(o). Given these factual findings, Morley's court-martial must be counted as a prior strike, which renders him a persistent offender. RCW 9.94A.030(27)(a).
Defendant James challenges the trial court ruling which held his court-martial is comparable to several Washington offenses. First, James claims a court may not look beyond the statutory elements of a foreign *177 crime when determining if the foreign conviction is comparable to a Washington offense. He bases his argument primarily on faulty interpretations of State v. Luckett, 73 Wash.App. 182, 869 P.2d 75 (1994) and State v. Duke, 77 Wash.App. 532, 892 P.2d 120 (1995).
In Luckett, the defendant had a prior California conviction for robbery which the sentencing court compared to this state's robbery statutes. The sentencing judge relied on information in a probation officer's report which revealed the defendant had been armed when he committed the California crime. Because of the deadly weapon, the sentencing judge treated the California robbery as a class A felony under Washington law. Luckett, 73 Wash.App. at 187, 869 P.2d 75. The Court of Appeals reversed this finding. The court noted California could have charged the defendant under a different statute for armed robbery but did not do so. The court held it was inappropriate for the sentencing judge to rely on the probation report as a source of additional information regarding the gun. Luckett does not support James' claim that the sentencing judge cannot look behind the statutory elements of a foreign crimethe case holds only a sentencing judge cannot go so far as to rely on unsubstantiated information in a probation officer's report.
State v. Duke also refutes James' argument. In Duke the defendant had a prior court-martial conviction for violating article 134, a general "catchall" provision for any disorderly conduct not specifically mentioned in the U.C.M.J. Duke, 77 Wash.App. at 535, 892 P.2d 120. The underlying crime involved Duke's soliciting another to kill Duke's wife, but solicitation in Washington requires proof the solicitor intended the crime be committed. Id. The court refused to consider the court-martial as comparable to a Washington offense because "[t]he record in Mr. Duke's court-martial gives no indication the court found he intended the crime to have been committed." Duke, 77 Wash.App. at 536, 892 P.2d 120 (emphasis added). The court explicitly looked behind the elements of article 134 and examined Duke's conduct as stated in the charging documents and trial record.
In James' court-martial, he pleaded guilty to attempted rape (U.C.M.J. article 80 and 120, 10 U.S.C. §§ 880 & 920), sodomy (U.C.M.J. article 125, 10 U.S.C. § 925), and robbery (U.C.M.J. article 122, 10 U.S.C. § 922). The U.C.M.J. elements for these crimes must be compared to the elements of comparable Washington offenses. A punishable attempt to commit a crime, under the U.C.M.J., is defined as:
An act, done with specific intent to commit an offense under this chapter, amounting to more than mere preparation and tending, even though failing, to effect its commission, is an attempt to commit that offense.
U.C.M.J. article 80, 10 U.S.C. § 880(a). The crime of criminal attempt in Washington is defined in RCW 9A.28.020(1):
A person is guilty of an attempt to commit crime if, with intent to commit a specific crime, he does any act which is a substantial step toward the commission of that crime.
Since the military attempt charge involved attempted rape, the elements of the attempted crime must also be compared to Washington offenses. The elements of rape under the U.C.M.J. are as follows:
(a) Any person subject to this chapter who commits an act of sexual intercourse, by force and without consent, is guilty of rape....
(b) Any person subject to this chapter who, under circumstances not amounting to rape, commits an act of sexual intercourse with a female not his wife, who has not attained the age of sixteen years, is guilty of carnal knowledge....
(c) Penetration, however slight, is sufficient to complete either of these offenses.
U.C.M.J. article 120, 10 U.S.C. § 920.
First degree rape was defined in Washington in 1979 as occurring when one
engages in sexual intercourse with another person not married to the perpetrator by forcible compulsion where the perpetrator or an accessory:
(a) Uses or threatens to use a deadly weapon; or

*178 (b) Kidnaps the victim....
Former RCW 9A.44.040. If a deadly weapon or kidnapping were not involved, the crime would be second degree rape. Former RCW 9A.44.050. Sexual intercourse was broadly defined as including any vaginal or anal penetration, however slight, and "any act of sexual contact between persons involving the sex organs of one person and the mouth or anus of another whether such persons are of the same or opposite sex." Former RCW 9A.44.010(1)(b).
The U.C.M.J. and Washington elements of criminal attempt appear to be comparable. James argues the U.C.M.J. attempt statute, as it has been applied by the military courts, is broader than the Washington counterpart. Because of this alleged broader application of the statute, he claims the attempted rape charge cannot be considered comparable to any Washington crime. James also argues the elements of rape are not comparable. This argument fails when James' specific criminal conduct underlying the military charges is compared to the Washington statutes. If the elements of a foreign crime are broader than a comparable Washington crime, this court can rely on other court documents underlying the foreign conviction to determine whether the defendant's conduct would have violated a Washington statute. The State has attached to its brief, and also submitted as an exhibit, the entire court-martial record. Two documents within the record shed light on the full scope of the foreign crime. One document involves a stipulation of facts signed by James. The other document is a transcript of the court-martial hearing where the military judge accepted James' guilty plea. Before accepting the plea, the judge questioned James in detail about his conduct underlying the charges. The transcript will not be discussed here, since it merely supports the details set out in the stipulated facts:
About 2330 hours on 28 December 1978, Beate Roth, a 16 year old student, was standing at a bus stop in Weisbaden, Germany, with two boys with whom she had spent the evening. The two boys got on a bus and Beate decided to walk home rather than wait for her bus. As she was walking in a well lit residential area, she suddenly heard steps behind her. A man, whom she later identified at a line-up as the accused, put his hand over her mouth, held a knife against her throat and warned her to "Shut up" when she attempted to scream. The accused forced Beate down a driveway and against a wall where she stepped out one leg of her pants when he ordered her to remove them. The accused then dropped his pants and attempted to insert his erect penis into her vagina while they were standing. He was able to penetrate only slightly and Beate attributed this to the fact that she was very tense. He then forced her to go down some stairs to a cellar where he pushed her to the ground, placed himself on the top of her and again attempted to have sexual intercourse with her. He was again unsuccessful because she "stiffened (her) body too much." She has never had intercourse and it hurt her when he tried to penetrate her vagina. He then forced her to take his penis into her mouth which she did because he had told her if she did not comply with his requests he would kill her. After a short while, the accused removed his penis from her mouth and started looking through her purse, saying something about money. She took her purse and handed over the German money she had which was about three marks.
Ex. 2.
It is clear from these stipulated facts that James' attempted intercourse underlying the court-martial would have met the elements for at least attempted second degree rape. The sentencing court agreed with this comparison. While the use of the knife arguably raised the crime to attempted first degree rape, the State did not raise this argument, so we do not discuss it. In 1979, second degree rape was a class B felony. Former RCW 9A.44.050 (second degree rape is now classified as a class A felony). An attempt to commit a class B felony is classified as a class C felony. RCW 9A.28.020(3)(c). The offender score statute states prior convictions for attempted crimes are to be scored as if they were convictions for completed offenses, RCW 9.94A.360(5) (1996), but it is unclear whether this subsection requires the *179 sentencing court to consider an attempted crime as the same class of felony as the completed crime when applying RCW 9.94A.360(2) (1996), the wash-out provision. We do not decide the issue here, since the distinction is immaterial to James' case. Even with James' attempted rape classified as a class C felony, the crime still fails to wash out because he was convicted of first degree assault in 1981, just two years after his 1979 court-martial. Since the court-martial conviction for the attempted rape does not wash out, it must be included in James' offender score.
An attempt to commit a most serious offense is the equivalent of committing the most serious offense. RCW 9.94A.030(23). First and second degree rape are now both classified as class A felonies, RCW 9A.44.040-.050, and third degree rape is currently classified as a class C felony. RCW 9A.44.060(2). All three degrees of rape are listed as most serious offenses. RCW 9.94A.030(23)((a) & (n)). James' attempted rape counts as a most serious offense.
By reviewing the stipulated facts above, it is clear James' court-martial for sodomy is also comparable to at least second degree rape. Sodomy is defined in the U.C.M.J. as the following:
Any person ... who engages in unnatural carnal copulation with another person of the same or opposite sex or with an animal is guilty of sodomy. Penetration, however slight, is sufficient to complete the offense.
U.C.M.J. article 125, 10 U.S.C. § 925(a). While these elements admittedly have no direct counterpart under Washington law, James' conduct underlying this charge consisted of his forcing the victim to place her mouth over his penis. Such conduct falls within the broad definition of sexual intercourse, RCW 9A.44.010(1)(c), and could be classified as first degree rape because of the presence of the knife, or at least second degree rape. The sentencing court, for some unknown reason, found the sodomy charge was equivalent just to rape in the third degree. Nonetheless, third degree rape, as a class C felony (RCW 9A.44.060(2)), still counts toward James' offender score, and third degree rape is also listed as a most serious offense.
The previous discussion involving Morley's court-martial for robbery, in violation of article 122, equally applies to James' court-martial for the same crime. James' court-martial on the robbery charge is comparable to a class B felony in Washington. As stated above, since James was convicted of another crime in Washington within two years of his 1979 court-martial, his 1979 conviction cannot wash out under RCW 9.94A.360(2) (1996), and it must be included in his offender score. All three charges in James' court-martial independently satisfy the statutory requirements for being considered as prior strikes under I-593.
We conclude the courts-martial of both Morley and James were properly included in Defendants' offender scores. None of the court-martial convictions wash out under RCW 9.94A.360(2) (1996), and they are comparable to Washington offenses under RCW 9.94A.360(3). Furthermore, both Defendants' courts-martial are comparable to most serious offenses under RCW 9.94A.030(23), thereby counting as strikes, and elevating Defendants to the status of persistent offenders. RCW 9.94A.030(27)(a).

Third Issue: Are Defendants' courts-martial valid under Ammons?

Morley claims his court-martial is constitutionally infirm on its face, precluding its use in sentencing. James also argues his court-martial is unconstitutional, such that the sentencing court should not have used it to increase James' offender score. Both Defendants' arguments essentially rely on the rule of law as stated in State v. Ammons, 105 Wash.2d 175, 187-88, 713 P.2d 719, 718 P.2d 796 (1986):
We hold that the State does not have the affirmative burden of proving the constitutional validity of a prior conviction before it can be used in a sentencing proceeding. However, a prior conviction which has been previously determined to have been unconstitutionally obtained or which is constitutionally invalid on its face may not be considered. See In re Bush, [26 Wash. App. 486,] 497-98[, 616 P.2d 666 (1980), *180 aff'd, 95 Wash.2d 551, 627 P.2d 953 (1981) ]; United States v. Tucker, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967). Constitutionally invalid on its face means a conviction which without further elaboration evidences infirmities of a constitutional magnitude.
Morley claims his court-martial is facially unconstitutional because courts-martial lack the following constitutional entitlements:
1. No guarantee of a jury of 12.
2. No guarantee of a jury of at least 6.
3. No requirement of unanimity in the verdict of a jury.
4. No provision for a jury of one's peers.
5. No provision for an impartial jury.
6. No random selection of jury members.
7. No meaningful decision between bench and jury trial.
Br. of Appellant at 38-39. It is true a jury in a general court-martial is required to have only five "members," or jurors, U.C.M.J. article 16, 10 U.S.C. § 816(1)(A), but the panel may be larger. It is also true the members do not have to be unanimous for noncapital cases. A conviction requires three-fourths majority for sentences longer than 10 years, and two-thirds majority for lesser offenses. U.C.M.J. article 52, 10 U.S.C. § 852. Morley's observations involving the role of a jury in a court-martial proceeding are immaterial to his particular court-martial: Morley expressly waived his right to be tried by a jury, and he voluntarily submitted his trial to a military judge. Given that he was tried by a military judge, the alleged differences between military and civilian juries are irrelevant. Morley has not pointed to any facially unconstitutional aspect of his particular court-martial. The State's rebuttal of Morley's argument thoroughly demonstrates this:
Facially invalid means "a conviction which without further elaboration evidences infirmities of a constitutional magnitude." Ammons, 105 Wash.2d at 188 [713 P.2d 719]. Here, defendant argues that the court martial is invalid because he did not receive a jury trial. But, here, the record shows that defendant personally made and signed a written request for bench trial after (1) being informed who the judge would be, (2) consulting with counsel, and (3) being informed of his right to trial by a court martial panel. 1 CP 29, Appendix A. This written request for bench trial would satisfy Washington's procedure for jury waiver under CrR 6.1(a) and art. 1, sec. 21 of the Washington Constitution. When the record contains a written waiver complying with CrR 6.1(a), there is sufficient demonstration of a valid jury waiver. State v. Harper, 33 Wash. App. 507, 509, 655 P.2d 1199 (1982). Accordingly, defendant fails to show facial invalidity of the court martial.
Br. of Resp't at 26-27 (footnote omitted).
James similarly misplaces his constitutional challenge. His claim of unconstitutionality also rests on differences in the military jury system, but this argument is even less persuasive in James' situation. James pleaded guilty to all the charges in his court-martial, and he has not pointed to any unconstitutional aspect of the proceedings whereby he entered his guilty plea and was sentenced. See State v. Aronson, 82 Wash. App. 762, 766, 919 P.2d 133 (1996) (Aronson's guilty plea made many of the constitutional protections inapplicable). The State's argument is persuasive:
Under Washington law, a guilty plea must be knowing, intelligent, voluntary and made with knowledge that certain rights are waived. State v. Branch, 129 Wash.2d 635, 642, 919 P.2d 1228 (1996). Those rights are: (1) the right to a jury trial; (2) the right to confront one's accusers; and (3) the right to remain silent. Branch, 129 Wash.2d at 644 n. 4, 919 P.2d 1228.
Here, the record of defendant's guilty pleas demonstrates that the defendant was aware of and waived his right to a jury trial. EX 2 (Appendix B-5). The defendant was also aware of and waived the following rights: (1) the right to plead not guilty; (2) the right to have the prosecution prove the crimes beyond a reasonable doubt; (3) the right to remain silent; (4) the right to have the judge determine guilt; and (5) the right to confront and *181 cross-examine witnesses against him. EX 2 (Appendix B-9 to B-10).
Defendant's pleas, even if measured by Washington law, are clearly constitutionally valid.
Reply Br. and Resp. to Cross Appeal at 22-23. The trial court also verbally stated similar findings on the constitutionality of James' court-martial. Neither Defendant was tried by a military jury, so we need not address whether a military conviction by a nonunanimous five-member jury would satisfy Ammons. Both Defendants have failed to establish the facial invalidity of their courts-martial.
Defendants implicitly urge this court to reject all courts-martial as prior convictions because courts-martial are not held to the same constitutional standards as are civilian criminal convictions. Certain differences do exist between courts-martial and civilian criminal trials. The Fifth Amendment expressly exempts military cases from its scope, but it is not clear how far that exemption reaches. See, e.g., Middendorf v. Henry, 425 U.S. 25, 43, 96 S.Ct. 1281, 1291, 47 L.Ed.2d 556 (1976) ("We recognize that plaintiffs, who ... are due to appear before a summary court-martial, may be subjected to loss of liberty or property, and consequently are entitled to the due process of law guaranteed by the Fifth Amendment."); see also Weiss v. United States, 510 U.S. 163, 176, 114 S.Ct. 752, 760, 127 L.Ed.2d 1 (1994) ("Congress, of course, is subject to the requirements of the Due Process Clause when legislating in the area of military affairs, and that Clause provides some measure of protection to defendants in military proceedings.").
Even though military proceedings are exempted from the Fifth Amendment, Congress has nonetheless provided an extensive list of rights for military personnel accused of a crime, as observed by Commonwealth v. Smith, 528 Pa. 380, 598 A.2d 268, 11 A.L.R.5th 989 (1991). Smith held a prior court-martial could be considered in sentencing the defendant as a recidivist. The court refuted the defendant's broad attack against the constitutionality of courts-martial:
Appellant contends in his brief that a court-martial is not a court proceeding designed to give the accused all those rights guaranteed an accused under the Federal Constitution and/or the Pennsylvania Constitution. Thus, he argues that the legislature may have concluded that a conviction rendered by a general court-martial tribunal should not be used for enhancement purposes for a subsequent state criminal offense because court-martial proceedings may not afford an accused all of those rights guaranteed an accused under our Federal Constitution. We disagree that general court-martial proceedings and civilian trials are so diverse as to render military convictions invalid for enhancement purposes.
As Judge Montemuro so aptly stated in his opinion in this matter:
The Uniform Code of Military Justice, which was in effect at the time the appellee was being prosecuted, provided a member of the armed forces with the following rights: no person may be apprehended unless the apprehending officer does so upon a reasonable belief that an offense has been committed and that the person apprehended committed it (10 U.S.C. § 807(b)); no person may be arrested or confined except for probable cause (10 U.S.C. § 809(d)); a person arrested or confined has the right to be informed of the accusations brought against him and the right to speedy resolution of those charges (10 U.S.C. §§ 830(b) and 810); an accused has a right to competent counsel (10 U.S.C. §§ 827(a) and 838); no person may be compelled to incriminate himself (10 U.S.C. § 831(a)); no person may be interrogated without first being informed of the nature of the accusation, of his right to silence, and that any statement he may make may be used against him at his court-martial (10 U.S.C. § 831(b)); information obtained in violation of § 831 is inadmissible at the court-martial (10 U.S.C. § 831(c)); an accused has the right to cross-examine adverse witnesses, to present a defense, and to a copy of the charges (10 U.S.C. § 832(b)); pre-trial, trial, and post-trial proceedings shall, as far as practical, conform to *182 those principles of law and rules of evidence generally recognized in the trial of criminal cases in the United States District Courts (10 U.S.C. § 836); all court proceedings shall be made a part of the record and shall be in the presence of the accused and counsel (10 U.S.C. § 839(b)); no person may be tried a second time for the same offense (10 U.S.C. § 844); the accused may withdraw his plea prior to sentencing (10 U.S.C. § 845); the jury is instructed that the accused is presumed innocent until proven guilty beyond a reasonable doubt and that this burden of proof is upon the United States (10 U.S.C. § 851); the accused has thirty days after sentence in which to request its reconsideration (10 U.S.C. § 860); and the accused has a right to appellate review with the aid of counsel (10 U.S.C. §§ 861 and 870).
Smith, 598 A.2d at 272-73.
The United States Supreme Court has also stated military courts are bound by the same fundamental concepts of fairness and justice:
[T]he constitutional guarantee of due process is meaningful enough, and sufficiently adaptable, to protect soldiersas well as civiliansfrom the crude injustices of a trial so conducted that it becomes bent on fixing guilt by dispensing with rudimentary fairness rather than finding truth through adherence to those basic guarantees which have long been recognized and honored by the military courts as well as the civil courts.
Burns v. Wilson, 346 U.S. 137, 142-43, 73 S.Ct. 1045, 1049, 97 L.Ed. 1508 (1953) (plurality opinion). Additionally, to ensure court-martial proceedings adhere to these basic principles, defendants have extensive rights to seek review of their courts-martial, 10 U.S.C. §§ 860, 864, 866-67, 869. A person wrongfully and unconstitutionally convicted by court-martial may also seek review by the United States Supreme Court either by certiorari, see, e.g., Davis v. United States, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994) (reviewing and affirming a defendant's life sentence on a conviction by court-martial for unpremeditated murdercertiorari was granted at 510 U.S. 942, 114 S.Ct. 379, 126 L.Ed.2d 329 (1993)), or by the federal writ of habeas corpus. See, e.g., Middendorf, 425 U.S. at 29, 96 S.Ct. at 1285 (reviewing a case which started as a class action writ of habeas corpus filed with a federal district court, where petitioners sought relief from their confinement as a result of summary courts-martial); see generally John E. Theuman, Annotation, Review by Federal Civil Courts of Court-Martial ConvictionsModern Cases, 95 A.L.R. Fed. 472 (1989).
It becomes clear that, despite procedural differences between courts-martial and civilian criminal trials, courts-martial must still comport with basic constitutional guaranties and protections. If a court-martial complies with federal constitutional protections, nothing prevents a sentencing court from counting the court martial as a prior conviction for purposes of sentencing. Cf. In re Personal Restraint of Teddington, 116 Wash.2d 761, 772-73, 808 P.2d 156 (1991) (evidence obtained by federal officers, if consistent with federal constitutional standards, can be introduced in a Washington criminal trial since the state constitution has no control over federal action). In the analogous situation of using a prior court-martial conviction to establish habitual offender status, all but three states which have addressed the issue have allowed courts-martial to be considered. See Christopher Vaeth, Annotation, Use of Prior Military Conviction To Establish Repeat Offender Status, 11 A.L.R.5th 218 (1993).
Defendants have failed to demonstrate any facial invalidity of their courts-martial. We find nothing constitutionally repugnant in the system of military courts-martial which would require us to exclude courts-martial from consideration under the SRA. We hold Defendants' courts-martial were properly included in their criminal histories.

Fourth Issue: Did the sentencing court improperly refuse to sentence James to life in prison?
This issue only involves James' sentence. The sentencing court found James' court-martial was constitutionally valid. The court ruled the court-martial did, count toward *183 his offender score. It appears the court recognized the court-martial was comparable to a most serious offense. Nonetheless, the court forbade the State, on equitable grounds, from seeking persistent offender status for James. The sentencing court's authority to make such an order is questionable.
Under the language of the Persistent Offender Accountability Act, the sentencing court is required to impose a life sentence if the defendant's criminal history qualifies the defendant as a persistent offender. RCW 9.94A.120(4) ("A persistent offender shall be sentenced to a term of total confinement for life without the possibility of parole....") (emphasis added); see State v. Thorne, 129 Wash.2d 736, 768, 921 P.2d 514 (1996) ("The Persistent Offender Accountability Act does not grant discretion to either the judiciary or the prosecutor in the sentencing of persistent offenders.") (footnote omitted). The SRA simply does not give the court the discretion to ban the State from "seeking" persistent offender status. The sentencing court's equitable concerns are more appropriately addressed by allowing James to withdraw his guilty plea, as argued by the State.
Before a sentencing court can allow withdrawal of a guilty plea, several factors must be considered. Under CrR 4.2(d), the trial court is required to correctly inform a defendant who pleads guilty as to the maximum sentence on the charge, and any additional punishment which may be required as a result of prior convictions. In re Personal Restraint of Baca, 34 Wash.App. 468, 471, 662 P.2d 64 (1983) (citing In re Personal Restraint of Williams, 21 Wash. App. 238, 240, 583 P.2d 1262 (1978)). When a defendant is misinformed of the potential sentence, numerous factors must be analyzed when fashioning an appropriate remedy:
(1) whether the error was inadvertent or the product of bad faith on the part of the State; where bad faith is found to exist, the court should give considerable weight to the choice of remedy sought by defendant;
(2) whether retrial of petitioner on the original charges would be frustrated by absence of witnesses of either the State or the defendant;
(3) whether the discrepancy between the sentence imposed and the one anticipated by the plea agreement is great or small;
(4) the seriousness of the offenses to which pleas were entered;
(5) whether the particular remedy selected will, in a fair way, restore defendant to the position he would have been in had the violation of CrR 4.2(d) not occurred.
In re Baca, 34 Wash.App. at 472, 662 P.2d 64 (quoting State v. Pope, 17 Wash.App. 609, 614-15, 564 P.2d 1179 (1977)). These factors support allowing James to withdraw his guilty plea. The sentencing court found no bad faith on the State's failure to discover the court-martial. It appears James failed to disclose the court-martial to the State, but the sentencing court held this failure was not fraud, since James and his defense counsel could have reasonably expected courts-martial did not constitute a part of a defendant's criminal history. Even if James was misled as to whether a court-martial constitutes prior criminal history, the appropriate remedy is to allow James to withdraw his guilty plea. State v. Wakefield, 130 Wash.2d 464, 467, 925 P.2d 183 (1996); see also State v. Aronson, 82 Wash.App. 762, 763-64, 919 P.2d 133, (1996) (mentioning the defendant was given a chance to withdraw his guilty plea after the court ruled defendant's court-martial would be included in the offender score, increasing the sentencing range by nearly five years).
In conclusion, we affirm Morley's sentence of life in prison without possibility of parole, and we remand State v. James to allow James the opportunity to withdraw his guilty plea in light of his qualifying as a persistent offender.
DURHAM, C.J., and SMITH, GUY and TALMADGE, JJ., concur.
JOHNSON, Justice (dissenting).
We are confronted with the simple question of whether a conviction in a general court-martial can be used to enhance a sentence under RCW 9.94A, the Sentencing Reform *184 Act of 1981(SRA) and regarded as a "strike" under the Persistent Offender Accountability Act. We are not disputing the validity of the military proceeding, nor determining whether the full faith and credit clause plays a role in this case. Contrary to the majority's position, I would find the language of the statute does not include military proceedings in the circle of prior convictions which can be used to enhance a sentence or be considered a "strike."
The majority opinion gives no meaning to the express limiting language in RCW 9.94A. By failing to do so, the majority erroneously expands the scope of a statute that specifically limits convictions to a certain type. Therefore, I respectfully dissent.
Under the statute, a defendant's sentence is determined in part by the defendant's "criminal history," which is "the list of a defendant's prior convictions, whether in this state, in federal court, or elsewhere." RCW 9.94A.030(12)(a). The critical issue is what are the "convictions" the statute references. The obvious starting point is the statutory definition. "Conviction" is defined as "an adjudication of guilt pursuant to Titles 10 or 13 RCW and includes a verdict of guilty, a finding of guilty, and acceptance of a plea of guilty." RCW 9.94A.030(9). The crucial question becomes what is "pursuant to Title 10."
I believe the "pursuant to Title 10" language expresses the Legislature's intent to limit, the application of the SRA to specific proceedings, rather than include the multitude of other adjudicatory proceedings in which findings of illegal conduct are entered.
In order to properly interpret a statute, we must define the specific words within the statute. Words used in a statute are to be given their usual and ordinary meaning. Garrison v. Washington State Nursing Bd., 87 Wash.2d 195, 196, 550 P.2d 7 (1976). Undefined terms are given their "plain, ordinary and popular" meaning, and courts look to standard English language dictionaries to determine the ordinary meaning of such terms. Boeing Co. v. Aetna Cas. & Sur. Co., 113 Wash.2d 869, 877, 784 P.2d 507 (1990) (quoting Farmers Ins. Co. v. Miller, 87 Wash.2d 70, 73, 549 P.2d 9 (1976)). As the majority correctly notes, "pursuant to" is defined as "in the course of carrying out: in conformance to or agreement with: according to...." Majority at 171 (quoting Webster's Third New International Dictionary 1848 (1986)). The majority, however, does not apply this definition to the statute.
The majority erroneously believes "pursuant to" means an out-of-state conviction could not be used for SRA" purposes unless the criminal procedure of the foreign state fully complies with Washington's. The majority reaches this conclusion by arguing the court rules governing preliminary hearings, bail and appearance bonds, jurisdiction and venue, warrants and arrests, arraignment, trial, and judgment and sentencing must all be identical to Washington's court rules before a sentencing court could use the conviction for SRA purposes. Majority at 171. The majority asserts this would be "absolutely unworkable," and it would require a sentencing court to conduct a "ridiculous inquiry." Majority at 171. Despite having the proper definition in the opinion, the majority redefines "pursuant to" to mean "identical to." This change creates the difficulty the majority has with the statutory interpretation in this case, and it leads the majority to the mistaken belief that it must rewrite the statute.
Contrary to the majority, I find the dictionary definition useful and would hold a "conviction" is only a "conviction" for purposes of the SRA and for sentence enhancement when the criminal procedure is "in conformance to or in agreement with" criminal procedure outlined in Title 10. Applying this definition, "pursuant to Title 10" must refer to those limited criminal cases where constitutional principles and procedures in conformance to Title 10 apply. Both out-of-state and federal criminal convictions fit within this definition because these proceedings are fully in accord with the various criminal provisions in the United States Constitution and, while not literally identical, are generally in conformance to Title 10. When "pursuant to Title 10" is read to include convictions from other states and federal courts, and to exclude convictions from military and foreign courts, *185 the majority's "doomsday" concerns are eliminated.
The role of the United States Constitution in the regulation of the criminal justice process is significant. Of the 26 separate rights specified in the first eight amendments to the Bill of Rights, 15 directly relate to the criminal justice process. 1 Wayne R. LaFave & Jerold H. Israel, Criminal Procedure § 2.1, at 56-57 (1984). The Fourth Amendment guarantees the right of people to be secure against unreasonable searches and seizures. The Fifth Amendment requires prosecution by grand jury indictment, prohibits placing a person in double jeopardy, and protects an individual from self-incrimination. The Fifth Amendment also prohibits the deprivation of life, liberty, or property without due process of law. The Sixth Amendment lists several rights applicable in all criminal prosecutions the right to a speedy trial, to a public trial, to a trial by jury, to have favorable witnesses testify, and to have effective assistance of counsel. The Eighth Amendment prohibits excessive bail or fines and prohibits cruel and unusual punishment. Id. § 2.1, at 57. While military law generally provides for these protections through the Uniform Code of Military Justice, 10 U.S.C. §§ 801-941, not all constitutional protections apply to military personnel. It is true that constitutional rights are not surrendered upon entering the military, but constitutional rights are applied to military personnel with reference to the unique conditions that exist within military society. Middendorf v. Henry, 425 U.S. 25, 50-51, 96 S.Ct. 1281, 1295, 47 L.Ed.2d 556 (1976) (Powell, J., concurring). As the United States Supreme Court stated in Burns v. Wilson, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953):
Military law, like state law, is a jurisprudence which exists separate and apart from the law which governs in our federal judicial establishment. This Court has played no role in its development; we have exerted no supervisory power over the courts which enforce it; the rights of men in the armed forces must perforce be conditioned to meet certain overriding demands of discipline and duty, and the civil courts are not the agencies which must determine the precise balance to be struck in this adjustment. The Framers expressly entrusted that task to Congress.
Burns, 346 U.S. at 140, 73 S.Ct. at 1047-48 (footnotes omitted).
The Constitution gives Congress the power to "make rules for the government and regulation of the land and naval forces." U.S. Const. art. I, § 8, cl. 13. The existence of this separate provision implicitly recognizes that the demands of the military require "a special system of military courts in which not all of the specific procedural protections deemed essential in Art. III trials need apply." O'Callahan v. Parker, 395 U.S. 258, 261, 89 S.Ct. 1683, 1685, 23 L.Ed.2d 291 (1969) (emphasis added), overruled on other grounds by Solorio v. U.S., 483 U.S. 435, 107 S.Ct. 2924, 97 L.Ed.2d 364 (1987).
As the majority notes, the Fifth Amendment does not extend to court-martial proceedings. While declaring the Sixth Amendment's jury guarantee a "centerpiece of American freedom," one commentator stresses that a military accused does not have a right to a jury of one's peers. 1 Francis A. Gilligan, Court-Martial Procedure § 1-60.00, at 36 (1991). However, the right to a jury is considered so important it appears in the Constitution twice, first in U.S. Const. art. III, § 2 and then again in the Sixth Amendment. United States ex rel. Toth v. Quarles, 350 U.S. 11, 16, 76 S.Ct. 1, 5, 100 L.Ed. 8 (1955). Further, the provisions of U.S. Const. art. III, designed to give judges the maximum freedom from possible coercion or influence, are not applicable to the military courts. Toth, 350 U.S. at 16, 76 S.Ct. at 5. While subtle differences between state and federal civilian courts exist, courts-martial are decidedly different and not "pursuant to Title 10." Indeed, the United States Supreme Court stated:
We find nothing in the history or constitutional treatment of military tribunals which entitles them to rank along with Article III courts as adjudicators of the guilt or innocence of people charged with offenses for which they can be deprived of their life, liberty or property.
Toth, 350 U.S. at 17, 76 S.Ct. at 5.
The majority erroneously determines that convictions "pursuant to Title 10" encompass *186 only those convictions obtained in Washington and concludes "conviction" cannot be limited to in-state convictions for purposes of the SRA because the statute repeatedly references out-of-state convictions. Majority at 171. The majority's remedy for this dilemma is to ignore the express language of RCW 9.94A.030(9) and to simply exclude "pursuant to Title 10" from the definition.
Instead of attempting to harmonize the different sections of the statute, the majority violates a rule of construction and edits the statutory definition to fit its needs. Just as the court will not add language to a clear statute even if it believes the Legislature intended something else but failed to express it adequately, Adams v. Department of Soc. & Health Servs., 38 Wash.App. 13, 16, 683 P.2d 1133 (1984), nor should we delete language for the same purpose. The majority senses the Legislature intended all criminal convictions be included as criminal history and be used to enhance a sentence. Even if the majority is correct, it is the duty of the Legislature, not the court, to rewrite and clarify an unclear statute.[1] The majority's decision to ignore the express language of the statute must be questioned because no attempt was made to harmonize the statute.
The simple way to harmonize the definition of "conviction" with the rest of the statute is to recognize that the Legislature understands all convictions are not alike. While convictions may be recognized in Washington for purposes of the full faith and credit clause, not all are to be used for sentence enhancement. The Legislature intended to limit the statute to include only those "convictions" obtained in accordance with the constitutional protections made available to a defendant in Washington. For the reasons stated earlier, military courts-martial do not conform and are not included. We are not obligated to increase a defendant's punishment merely because the defendant had a prior adjudication included in the defendant's criminal history.
The practical implication of the majority's opinion creates the most difficulty. By ignoring "pursuant to Title 10," the majority effectively rewrites the statutory definition and expands the scope of "convictions" used to enhance a criminal sentence. As directed by the majority, we remove the "pursuant to Title 10" language from the statute, and the definition of "conviction" in RCW 9.94A.030(9) becomes: "an adjudication of guilt ... and includes a verdict of guilty, a finding of guilty, and acceptance of a plea of guilty." Noticeably absent is any reference to the type of proceeding which must accompany the adjudication.
Despite effectively rewriting the statute's definition of "conviction" earlier in the opinion, the majority feels compelled to demonstrate why military courts-martial convictions can and should be considered for SRA purposes.[2] This futile exercise indicates a degree of uncomfortableness with the proposition that any adjudication is acceptable, and it acknowledges the Legislature was concerned not only with the prior act, but also with the procedure through which the adjudication was obtained.
The majority asserts, aside from some procedural differences, a military court-martial and a criminal proceeding are similar because a court-martial must still comport with some basic constitutional guarantees and protections. The majority should be honest with this statementwhile courts-martial may indeed be constitutional in the broad sense of the word, courts-martial are authorized by an entirely separate article of the United States Constitution and are not governed by the same procedural rules governing state and federal civilian criminal trials. As the majority notes, the Fifth Amendment does not apply to court-martial proceedings. As I noted, significant differences exist between the two jury systems.
While I do not question the validity of a court-martial conviction, I do not believe it is *187 "pursuant to Title 10." The military justice system is mandated by Congress and recognized by the United States Supreme Court, but is recognized by the high court as legitimately unique. Middendorf, 425 U.S. 25, 96 S.Ct. 1281; Chappell v. Wallace, 462 U.S. 296, 300-03, 103 S.Ct. 2362, 2365-67, 76 L.Ed.2d 586 (1983). And, aside from the Supreme Court, our military system does not look to the civilian courts to dispose of military justice problems. David A. Schlueter, Military Criminal Justice: Practice and Procedure § 1-1, at 2-3 (3d ed.1992). The system is separate: separate crimes, procedures, and sanctions. Id. I believe the majority has wrongfully construed and broadened the statutory definition. Military courts-martial are not included as criminal history because they do not conform to Title 10.
MADSEN, ALEXANDER and SANDERS, JJ., concur.
NOTES
[1] This is not the first time a court has had difficulty interpreting this statute. See State v. Knowles, 46 Wash.App. 426, 431-32, 730 P.2d 738 (1986). The Legislature is aware of the ambiguous language and has made no attempt to clarify it.
[2] The majority conducts the same ridiculous, unworkable inquiry the majority previously claimed a court could not do. Majority at 171.