[No. 46713-1-I. Division One. January 21, 2003.]

THE STATE OF WASHINGTON, *Respondent*, v. KENNETH EDWARD BUNTING, *Appellant*.

*Eric Broman* (of *Nielsen, Broman & Koch, P.L.L.C.*) and *Nancy L. Talner*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Daniel J. Clark, Senior Deputy*, for respondent.

AGID, J. — Defendant Kenneth Bunting was convicted of second degree assault with a deadly weapon. The trial court sentenced him as a persistent offender based upon the assault conviction and his prior Illinois convictions for armed robbery in 1972 and murder/armed robbery in 1977. He appeals the assault conviction and his sentence on several grounds. He argues that the trial court erred in (1) failing to inform the jury of the sentencing consequences associated with the various charges and the lesser included offenses and (2) finding that his 1972 conviction for armed robbery in Illinois was a "strike" for purposes of the Persistent Offender Accountability Act (POAA).

We affirm Bunting's conviction because there is no basis here for deviating from the rule that the jury cannot know about the sentencing consequences of its verdict. But we reverse and remand for resentencing because the facts in the record do not support the conclusion that Bunting's 1972 conviction would have been a conviction under the Washington armed robbery statute.

## FACTS

On December 9, 1998, Bunting confronted Terry Beasley who was seated in a tavern called Hook, Line, and Sinker. Beasley testified that Bunting was angry because he believed that Beasley had told Bunting's girl friend that Bunting was gay. Beasley told the defendant he didn't want to talk, and Bunting became more hostile. As he approached Beasley, he was confronted by two customers who escorted

him out of the bar. Moments later, Bunting ran back into the bar, stabbed Beasley twice in the arm, and then quickly left. Bunting's version at trial was that he entered the tavern without knowing Beasley was there, they fought, and then he stabbed Beasley in self-defense. One month after the incident, the police arrested Bunting outside a donut shop, and Beasley identified him as the person who stabbed him. One of the officers read Bunting his *Miranda* rights and asked if he understood them.[1] Bunting answered that he did. The officer then took Bunting to the police station where he searched him and discovered a bag containing a green leafy substance in Bunting's pocket. Bunting said it was his marijuana. The officer took Bunting to an interrogation room and asked him if he wanted to make a statement about the stabbing. Bunting replied, "I don't know about that shit, I ain't gonna' cop to it."

The State charged Bunting with one count of attempted first degree murder and one count of second degree assault. At trial, a jury found Bunting guilty of the lesser charge of assault in the second degree. It also found that he was armed with a deadly weapon during the incident. At sentencing, the trial court found that Bunting's two prior convictions constituted "strikes" under the POAA and sentenced him to life in prison without the possibility of parole.

## ANALYSIS

### I. SENTENCING CONSEQUENCES OF CONVICTION

■■ Two basic rules of criminal law intersect in this case. First, "Washington courts . . . follow the view that punishment is irrelevant to the jury's task. . . . Only in capital cases is the sentencing decision in the hands of the jurors; and they are so instructed in capital cases."[2] Second, "[w]hen the evidence supports an inference that the lesser

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] *State v. Murphy*, 86 Wn. App. 667, 670-71, 937 P.2d 1173 (1997) (footnote omitted), *review denied*, 134 Wn.2d 1002 (1998).

included offense was committed, the defendant has a right to have the jury consider that lesser included offense."[3] Here, Bunting asks us to formulate an exception to the general rule that sentencing is irrelevant to the jury's task because, even though the jury convicted him of the lesser offense, the resulting sentence was the same. He argues that sentencing information is essential if the jury is to properly consider lesser included offense instructions. He asserts that not all Washington cases have rejected informing the jury of sentencing consequences and that, without that information, the jury could not effectively consider lesser included offenses.[4]

We reject Bunting's arguments for two reasons. First, when

> [p]unishment is a question of legislative policy, the jury's function is to find the facts.
>
> But when it comes to the imposition of the death penalty, the legislature has seen fit to make that question hinge upon a further fact to be found by the jury—how deeply has the defendant offended the community?[5]

The legislature has not seen fit to delegate sentencing under the POAA to the jury. Because this issue is for the legislature to decide, we cannot substitute our judgment or usurp its prerogative. Even in capital cases, the jury can consider the penalty only after a determination of guilt.[6]

Second, Bunting's prediction that the sentencing information would have influenced the jury to convict on a lesser degree of guilt is precisely what the policy against providing sentencing information seeks to prevent. "[A] strict prohibition against informing the jury of sentencing consider-

---

[3] *State v. Warden*, 133 Wn.2d 559, 564, 947 P.2d 708 (1997).

[4] Bunting cites *State v. Portnoy*, 43 Wn. App. 455, 461, 718 P.2d 805, *review denied*, 106 Wn.2d 1013 (1986). In *Portnoy*, the court held that a codefendant's testimony against the other defendant about his potential sentence was relevant to evaluate the credibility of the witness' testimony. This situation is quite different.

[5] *State v. Todd*, 78 Wn.2d 362, 375, 474 P.2d 542 (1970).

[6] *State v. Townsend*, 142 Wn.2d 838, 846, 15 P.3d 145 (2001).

ations ensures impartial juries and prevents unfair influence on a jury's deliberations."[7] As the United States Supreme Court has recognized: "It is well established that when a jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed.' "[8] By not informing the jury of the possible sentence, the trial court properly preserved the role of the jury as an impartial fact finder. There was no violation of Bunting's right to a fair trial.

## II. THE 1972 ILLINOIS ARMED ROBBERY CONVICTION

 Under former RCW 9.94A.120 (2001), an offender who has been convicted of two "most serious offenses" must be sentenced to life without parole upon conviction for a third such offense.[9] "To determine whether a foreign conviction counts toward an offender score, the sentencing court first compares the elements of the crime [of which the defendant was convicted] in the out-of-state statute to those of comparable Washington statutes in effect when the crime was committed."[10] If the statutory formulation of the out-of-state crime did not contain one or more of the elements of the Washington crime on the date of the offense, it means that the out-of-state court or jury did not have to find each fact that must be found to convict the defendant of the essential elements of liability under the Washington counterpart crime.[11] "[I]f the foreign statute is broader than the Washington definition of a particular crime, 'the sentencing court may look at the defendant's conduct, as evidenced by the indictment or information, to determine whether the

---

[7] *Id.*

[8] *Shannon v. United States*, 512 U.S. 573, 579, 114 S. Ct. 2419, 129 L. Ed. 2d 459 (1994) (footnote omitted) (quoting *Rogers v. United States*, 422 U.S. 35, 40, 95 S. Ct. 2091, 45 L. Ed. 2d 1 (1975)).

[9] *State v. Mutch*, 87 Wn. App. 433, 436, 942 P.2d 1018 (1997).

[10] *Id.* at 436-37.

[11] *Id.* at 438.

conduct would have violated the comparable Washington statute.' "[12]

It is clear that in 1972, the Illinois formulation of the crime of armed robbery did not require proof of specific intent to steal or deprive. In *People v. Banks*,[13] the Illinois Supreme Court examined the legislative history of the crime and held that armed robbery was committed by the simple act of taking by threat or force. Therefore, "armed robbery is proven if 'the prohibited result may reasonably be expected to follow from the offender's voluntary act even without any specific intent by the offender.' "[14] It is equally clear that in 1972, the crime of armed robbery in Washington required proof of specific intent to deprive.[15] Because the elements of the two crimes are different, we must look at the record to determine whether the conduct would have violated the comparable Washington criminal statute.

> While it may be necessary to look into the record of a foreign conviction to determine its comparability to a Washington offense, the elements of the charged crime must remain the cornerstone of the comparison. Facts or allegations contained in the record, if not directly related to the elements of the charged crime, may not have been sufficiently proven in the trial.[16]

In this case, the record contains three documents that provide facts surrounding the 1972 armed robbery: an "Official Statement of Facts," a complaint, and the indictment.

---

[12] *State v. Morley*, 134 Wn.2d 588, 606, 952 P.2d 167 (1998) (citing *State v. Duke*, 77 Wn. App. 532, 535, 892 P.2d 120 (1995)).

[13] 75 Ill. 2d 383, 388 N.E.2d 1244, 27 Ill. Dec. 195 (1979).

[14] *People v. Jamison*, 197 Ill. 2d 135, 161, 756 N.E.2d 788, 801, 258 Ill. Dec. 514 (2001) (quoting *People v. DeBusk*, 231 Ill. App. 3d 229, 241, 595 N.E.2d 1156, 1164, 172 Ill. Dec. 486 (1992)), *cert. denied*, 535 U.S. 1080 (2002).

[15] *State v. Carter*, 4 Wn. App. 103, 109-10, 480 P.2d 794 (citing *State v. Byers*, 136 Wash. 620, 241 P. 9 (1925); *State v. Steele*, 150 Wash. 466, 273 P. 742 (1929); *Wilken v. Squier*, 50 Wn.2d 58, 309 P.2d 746 (1957)), *review denied*, 79 Wn.2d 1001 (1971).

[16] *Morley*, 134 Wn.2d at 606.

The "Official Statement of Facts" is a document that the assistant state's attorney provided to the Department of Corrections dated January 8, 1973, after the defendant pleaded guilty to the crime alleged and was sentenced on December 29, 1972. The "Official Statement of Facts" states:

The Facts in the above indictment are briefly as follows:

On October 17, 1972 at 11:00 P.M. at 2705 So. State Street, Chicago, Illinois, the victim was approached by the defendant. Defendant displayed a small caliber revolver and demanded victim's money. Defendant took 24.00 USC. One hour later victim while touring area with police officers observed the defendant. He was arrested at that time and a small caliber pistol was recovered from his person.

The complaint alleges:

Kenneth E. Bunting has, on or about 17 October, 1972 at 2705 S. State [in] Chicago, Illinois committed the offense of Armed Robbery in that he by threatening the imminent use of force and while armed with a dangerous weapon, to wit: 22 Caliber General Precision Corporation revolver, serial # 2013, took $25.00 USC from the person of Daniel Taylor, in violation of Chapter 38 Section 18-2 [of the] Illinois Revised Statute . . . .

And the indictment charges:

The Grand Jurors . . . present that on October 17th, 1972 . . . . Kenneth E. Bunting committed the offense of armed robbery in that he, by the use of force and while armed with a dangerous weapon took an amount of United States currency (the exact amount of which is unknown to said Grand Jurors) from the person and presence of Daniel Taylor, in violation of Chapter 38, Section 18-2, of the Illinois Revised Statutes 1971 . . . .

We reject the State's argument that the "Official Statement of Facts" and the complaint should be considered for two reasons. First, the "Official Statement of Facts" and the complaint are allegations that were never proved at trial because Bunting pleaded guilty to the crime charged. Second, contrary to the State's assertion, he did not necessarily concede the allegations in those documents when he

pleaded guilty. The State provides no evidence that Bunting adopted the facts set forth in the complaint or those the assistant state's attorney alleged in a postsentencing statement to the Department of Corrections. Because Bunting pleaded guilty to armed robbery, the only acts he conceded were the elements of the crime stated in the indictment. The facts contained in the "Official Statement of Facts" and the complaint were not proved in a trial; therefore, we cannot consider them. Only the indictment is relevant here. The indictment does not allege intent to deprive as an element; nor does it clearly indicate that this element was proved or conceded by Bunting's guilty plea.

In addition, under the rationale of *State v. Bacani*, the indictment is insufficient to prove another element of robbery: ownership of the property.[17] In *Bacani*, we were constrained by earlier precedent to conclude that the words "intent to steal" alleged in an information charging first degree robbery were insufficient to supply the element of ownership. Therefore, the information was constitutionally deficient.[18] Certainly if the words "intent to steal" do not properly allege the ownership element of armed robbery in Washington, we cannot conclude that the word "took" does. Because the record before us is devoid of evidence that the intent and ownership elements of armed robbery were alleged or proved, we conclude that Bunting's armed robbery conviction does not constitute a strike for purposes of the POAA. We remand for resentencing consistent with this opinion.

A majority of the panel having concluded that the remainder of this opinion lacks precedential value, it is ordered that only the forgoing will be published. The balance of the opinion shall be filed for public record as provided in RCW 2.06.040.

BECKER, C.J., and KENNEDY, J., concur.

Reconsideration denied February 25, 2003.

---

[17] 79 Wn. App. 701, 902 P.2d 184 (1995).

[18] *Id.* at 704-05 (citing *State v. Morgan*, 31 Wash. 226, 71 P. 723 (1903)).