# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51026-0-II |
| Respondent, | |
| v. | |
| RICHARD SCOTT MCLAUGHLIN, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, J. — Richard McLaughlin appeals his sentence for delivery of a controlled substance – methamphetamine. He argues that the trial court erred by finding a 1991 Ohio conviction for gross sexual imposition factually comparable to the Washington crime of second degree child molestation. McLaughlin also challenges the trial court's imposition of legal financial obligations (LFOs) despite a finding of indigence.

Because the trial court relied on facts included in the indictment that were directly related to the elements of the 1991 Ohio conviction, we hold that the trial court did not err in finding factual comparability and affirm that determination. However, we reverse McLaughlin's sentence and remand his case for resentencing using a correct offender score. Regarding LFOs, we hold that the trial court did not err in imposing the crime victim penalty assessment but remand to the trial court to amend McLaughlin's judgment and sentence to reflect that the crime victim penalty assessment cannot be satisfied from funds that are subject to 42 U.S.C. § 407(a) and strike the criminal filing fee. Additionally, we remand for the trial court to determine whether the State has

already collected McLaughlin's deoxyribonucleic acid (DNA), and upon submission of a verified petition of indigence, make an individualized inquiry into McLaughlin's ability to pay the crime analysis laboratory fee.

FACTS

On February 2, 2016, McLaughlin was arrested at his residence for delivery of methamphetamine based on a controlled purchase operation set up with a confidential informant. On September 6, the State charged McLaughlin with delivery of a controlled substance (methamphetamine). Following trial, a jury found McLaughlin guilty.

During sentencing, the State argued that McLaughlin's offender score was 4 with a range of "20 plus to 60 months" due to McLaughlin's relevant criminal history. 1 Verbatim Report of Proceedings (VRP) at 312. The crimes included in the relevant criminal history were (1) a 2009 Skamania County conviction for failure to register as a sex offender, (2) a 2002 Skamania County conviction of possession of controlled substance – methamphetamine, and (3) a 1991 Ohio conviction of gross sexual imposition. The State used McLaughlin's 1991 Ohio conviction as a multiplier of McLaughlin's possession of a controlled substance conviction, but did not count the Ohio conviction as a point in his offender score. The State presented a certified copy of the Ohio indictment. The relevant language contained within the Ohio indictment on gross sexual imposition is as follows:

> The Grand Jurors of the County of Hamilton, in the name and by authority of the State of Ohio, upon their oaths do find and present that Richard S. McLaughlin, on or about the 3rd day of July in the year Nineteen Hundred and Ninety-One at the County of Hamilton and State of Ohio aforesaid, had sexual contact with [DLB], a person who was not Richard S. McLaughlin's spouse at the time, and the said [DLB] was less than thirteen years of age.

2

No. 51026-0-II

Second Suppl. Exs. at 3-4.[1]

The State argued that the Ohio crime of gross sexual imposition was comparable to second degree child molestation in the State of Washington. Although the trial court stated that the definition of "sexual contact" is "somewhat broader" out of Ohio, it ruled that "the sexual contact would fit under Washington law of sexual contact if he'd committed those acts . . . in the State of Washington." 1 VRP at 324-25. The trial court adopted the State's argument and set the offender score at 4 with a standard sentencing range of "20 to 60 months." *Id.* at 325. The court imposed a "midrange" sentence of 40 months. *Id.* at 326.

The trial court imposed mandatory LFOs, including (1) a criminal filing fee, (2) a DNA collection fee, (3) a crime laboratory fee, and (4) a crime victim penalty assessment. McLaughlin testified that he is disabled and receives social security disability benefits. The trial court found McLaughlin indigent and waived the mandatory drug fine.

ANALYSIS

I. COMPARABILITY OF OUT-OF-STATE CONVICTIONS

McLaughlin first argues that the trial court erred in finding the Ohio conviction factually comparable to the Washington crime of second degree child molestation because it relied on unproven facts. He argues that the documents reviewed by the trial court at sentencing—the indictment, plea agreement, and judgment and sentence—were not documents that the trial court

---

[1] In 1991, McLaughlin was charged with one count of felonious sexual penetration and one count of gross sexual imposition. He pleaded guilty to the reduced charge of "Gross Sexual Imposition F/3" on count 1 and "Gross Sexual Imposition With Specification F/3" on count 2. Second Suppl. Exs. at 6. Only one count of gross sexual imposition was used to calculate McLaughlin's offender score. However, the record does not indicate which count the court used to calculate his offender score.

is permitted to review in determining factual comparability. He contends that the State cannot present "facts" to prove comparability without violating his rights to proof beyond a reasonable doubt and trial by a jury. Appellant's Opening Br. at 11. McLaughlin further argues that the State failed to prove that the plea to having committed gross sexual imposition under former 29 Ohio Rev. Code § 2907.05 (1990) was for conduct that would have amounted to second degree child molestation if committed in Washington. We disagree with McLaughlin's contentions.

A. STANDARD OF REVIEW AND PRINCIPLES OF LAW

We review the classification of out-of-state convictions for sentencing purposes de novo. *State v. Jackson*, 129 Wn. App. 95, 106, 117 P.3d 1182 (2005). To determine the comparability of a foreign offense, Washington courts first determine whether the foreign offense is legally comparable—meaning, whether the elements of the foreign offense are substantially similar to the elements of the Washington offense. *State v. Thiefault*, 160 Wn.2d 409, 415, 158 P.3d 580 (2007). If the elements of the crimes are not identical or the foreign statute is broader, the court then determines factual comparability.[2] *State v. Olsen*, 180 Wn.2d 468, 473, 325 P.3d 187 (2014).

Offenses are factually comparable when the conduct for which the defendant was convicted would have violated a Washington statute. *Id.* at 473. To determine factual comparability, the court may rely only on any facts that were admitted, stipulated, or proved to the fact finder beyond a reasonable doubt. *Id.* at 473-74. The State bears the burden of providing sufficient evidence to prove by a preponderance of the evidence that a foreign offense is comparable with a Washington offense. *In re Pers. Restraint of Lavery*, 154 Wn.2d 249, 252, 111 P.3d 837 (2005).

---

[2] The State concedes that the 1991 Ohio conviction is not legally comparable. Thus, we address only the factual comparability prong.

"'[T]he sentencing court may look at the defendant's conduct, as evidenced by the indictment or information, to determine whether the conduct would have violated the comparable Washington statute." *State v. Morley*, 134 Wn.2d 588, 606, 952 P.2d 167 (1998) (quoting *State v. Mutch*, 87 Wn. App. 433, 437, 942 P.2d 1018 (1997)). When a defendant pleads guilty, the only acts conceded are "the elements of the crime stated in the indictment." *State v. Bunting*, 115 Wn. App. 135, 143, 61 P.3d 375 (2003).

B.  RELEVANT OHIO AND WASHINGTON STATUTES

On August 28, 1991, McLaughlin pleaded guilty to "Gross Sexual Imposition With Specification F/3." Second Suppl. Exs. at 6-7. The relevant language of the Ohio law on "Gross Sexual Imposition" at the time of the 1991 conviction is as follows:

> (A)  No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more persons to have sexual contact when any of the following applies:
> . . . .
> (4)  The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

Former 29 OHIO REV. CODE § 2907.05 (1990).

Ohio defined "sexual contact" as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." Former OHIO REV. CODE § 2907.01(B) (1990).

The State compared the Ohio offense to the Washington offense of second degree child molestation under RCW 9A.44.086(1) which states, in relevant part,

> A person is guilty of child molestation in the second degree when the person has, or knowingly causes another person under the age of eighteen to have, sexual

5

contact with another who is at least twelve years old but less than fourteen years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim.

C. FACTUAL COMPARABILITY

McLaughlin argues that the trial court erred by finding his 1991 Ohio conviction for gross sexual imposition factually comparable to the Washington crime of second degree child molestation. McLaughlin contends that the trial court erred because the State did not prove the age of the victim beyond a reasonable doubt, and at the time McLaughlin pleaded guilty, the crime of gross sexual imposition was a strict liability offense. We disagree.

1. AGE OF THE VICTIM

McLaughlin argues that the State "relied on the allegation that the victim was less than 13 as if it was proven, saying that proved that the defendant [McLaughlin] was convicted in Ohio of a specific section of the statute affected people that age, rather than any of the other sections of the Ohio law." Appellant's Opening Br. at 14. He relies on the fact that the plea form documents did not contain a statement of facts regarding age. However, this argument misinterprets the law.

When making a factual comparability analysis, the sentencing court is not limited to facts contained in the plea form documents. *See Morley*, 134 Wn.2d at 606. In fact, "'the sentencing court may look at the defendant's conduct, as evidenced by the indictment or information, to determine whether the conduct would have violated the comparable Washington statute.'" *Id*. (quoting *Mutch*, 87 Wn. App. at 437). Additionally, "the State need not independently prove those facts related to the foreign conviction that were admitted by the defendant." *State v. Releford*, 148 Wn. App. 478, 482, 200 P.3d 729 (2009).

The Ohio indictment stated, under the second count for gross sexual imposition, that McLaughlin "had sexual contact with [DLB], a person who was not Richard S. McLaughlin's spouse at the time, and the said [DLB] was less than thirteen years of age." Second Suppl. Exs. at 4. While it is true that courts must remain focused on the elements of the charged crime, *Morley*, 134 Wn.2d at 606, the victim's age is a relevant element of the 1991 crime of gross sexual imposition. Former OHIO REV CODE § 2907.05(A)(4). When McLaughlin pleaded guilty to gross sexual imposition, he conceded to the "elements of the crime stated in the indictment." *Bunting*, 115 Wn. App. at 143. Therefore, McLaughlin conceded to the fact that "[DLB] was less than thirteen years of age." Second Suppl. Exs. at 4.

2. STRICT LIABILITY

McLaughlin further argues that the State failed to prove that the plea to having committed gross sexual imposition was for conduct that would have amounted to second degree child molestation if committed in Washington because at the time of his conviction, gross sexual imposition, as proscribed by former 29 Ohio Rev. Code § 2907.05, did not require proof of a culpable mental state. We disagree.

At the time of McLaughlin's gross sexual imposition conviction in 1991, former 29 Ohio Rev. Code § 2907.05 required proof of sexual contact. Ohio defined "sexual contact" as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, *for the purpose* of sexually arousing or gratifying either person." Former OHIO REV. CODE § 2907.01(B) (emphasis added). McLaughlin refers this court to *Ohio v. Astley*, 36 Ohio App. 3d 247, 250, 523 N.E.2d 322 (1987), where the Tenth Appellate District of Ohio interpreted gross sexual imposition to be "a strict liability offense

7

and requires no precise culpable state of mind. All that is required is a showing of the proscribed sexual contact." Former 29 OHIO REV. CODE § 2907.05.

However, other Ohio appellate courts did not agree with *Astley*. In April 1991, months before McLaughlin's conviction in October 1991, the Fourth District held that the "assertion that there is no *mens rea* element in proving sexual contact is misplaced based on the clear language" of former 29 Ohio Rev. Code § 2907.01(B). *In re Matter of Grigson*, 1991 WL 62177 at *3 (Ohio Ct. App.). In 1992, the Ohio Supreme Court decided whether evidence was sufficient to prove the element of *purpose*, specifically whether the defendant engaged in "innocent contact" with his daughter or his contact was "for the purpose of sexual arousal and gratification." *Ohio v. Schaim*, 65 Ohio St. 3d 51, 57, 600 N.E.2d 661 (1992). In 1994, the Second District interpreted the definition of "sexual contact" under former 29 Ohio Rev. Code § 2907.01 and held that a culpable mental state is required for a gross sexual imposition conviction. *Ohio v. Mundy*, 99 Ohio App. 3d 275, 288, 650 N.E.2d 502 (1994). The *Mundy* court held that in order to convict the defendant of the offense, the state must prove beyond a reasonable doubt that "the defendant's subjective purpose or specific intention" in touching the victim was sexual arousal or gratification. *Id.*

Here, the mens rea element of the Ohio offense is substantially similar to the elements of the Washington offense. At the time of the conviction in Ohio, "sexual contact" was defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, *for the purpose* of sexually arousing or gratifying either person." Former OHIO REV. CODE § 2907.01(B) (emphasis added). Washington defined "sexual contact" as "any touching of the sexual or other intimate parts of a person done *for the purpose* of gratifying sexual desire of either party." RCW 9A.44.010(2)

(emphasis added). Both offenses require the offender touch the victim for a sexual purpose or intent. Without this element, nothing would distinguish sexual imposition or child molestation from ordinary assault and from noncriminal touching.

Because the facts in the indictment were conceded in the guilty plea, *Bunting*, 115 Wn. App. at 143, and both offenses contain the element of touching of the sexual or other intimate parts of another "for the purpose of gratifying sexual desire of either party," the 1991 Ohio conviction is factually comparable to the Washington crime of second degree child molestation at the time the crime took place. RCW 9A.44.010(2), .086(1); former OHIO REV. CODE § 2907.05.

## II. OFFENDER SCORE

The trial court determined that McLaughlin's offender score was 4. The parties agree that the court used the 1991 Ohio conviction as a multiplier of his possession of a controlled substance conviction. However, the court did not count McLaughlin's 1991 Ohio conviction as a point in his offender score. The parties concede that if McLaughlin's 1991 Ohio conviction is factually comparable, as we determined above, the sentencing court erred when it failed to include the 1991 Ohio conviction as a point in McLaughlin's offender score. The State argues that the offender score error is harmless. We disagree.

Under the Sentencing Reform Act of 1981, ch. 9.94A RCW, a sentencing court is required to properly calculate the offender score before imposing a sentence. *State v. Parker*, 132 Wn.2d 182, 189, 937 P.2d 575 (1997). "A sentencing court acts without statutory authority . . . when it imposes a sentence based on a miscalculated offender score." *In re Pers. Restraint of Johnson*, 131 Wn.2d 558, 568, 933 P.2d 1019 (1997).

The parties concede that the sentencing court erroneously excluded McLaughlin's Ohio conviction from his offender score, thereby finding his offender score was a 4 with a standard range of 20 to 60 months. Under RCW 9.94A.517, McLaughlin's standard range remains 20+ to 60 months whether his offender score is a 4 or a 5. RCW 9.94A.517(1). The State argues that because the standard range would not have changed, any error in calculating McLaughlin's offender score was harmless. RCW 9.94A.517(1).

We hold that McLaughlin's correct offender score is a 5; however, we cannot conclude this error was harmless. We cannot know that the sentencing court would impose the same sentence using the correct offender score, and we are required to remand for the sentencing court to recalculate his offender score because the sentencing court acted without statutory authority when it imposed a sentence based on a miscalculated offender score.[3] *Johnson*, 131 Wn.2d at 568.

### III. LEGAL FINANCIAL OBLIGATIONS

McLaughlin challenges the sentencing court's imposition of the criminal filing fee, the DNA collection fee, the crime laboratory fee, and crime victim penalty assessment. We remand to the trial court to strike the criminal filing fee, consider whether the State has previously collected McLaughlin's DNA, and, upon submission of a verified petition of indigence, consider McLaughlin's ability to pay the crime laboratory fee. However, we affirm the crime victim penalty assessment.

---

[3] We do not suggest by this opinion that the trial court is foreclosed from imposing the same sentence. We remand because the sentence must be predicated on an accurate offender score.

A. CRIMINAL FILING FEE

Recent legislation prohibits the imposition of certain LFOs, including the criminal filing fee, on a defendant who is indigent under RCW 10.101.010(3)(a)-(c). RCW 36.18.020(h); *State v. Ramirez*, 191 Wn.2d 732, 746, 426 P.3d 714 (2018). These statutory amendments apply prospectively to cases pending on appeal. *Ramirez*, 191 Wn.2d at 747.

A person is indigent under RCW 10.101.010(3)(a) if he or she receives public assistance, including disabled assistance benefits, at any stage of the court proceeding. At sentencing, the court found McLaughlin was indigent under RCW 10.101.010(3)(a) because McLaughlin receives disabled assistance benefits. Therefore, the trial court's imposition of the criminal filing fee on McLaughlin is prohibited.

B. DNA COLLECTION FEE

The legislature recently amended RCW 43.43.7541 and established that the DNA collection fee is no longer mandatory if the offender's DNA has been previously collected as a result of a prior conviction. LAWS OF 2018, ch. 269, § 18. RCW 43.43.7541 requires the collection of a DNA sample from every adult or juvenile convicted of a felony. McLaughlin has two prior felony convictions in Washington, but the record on appeal is silent as to whether the State previously collected his DNA. If such collection occurred, the trial court's imposition of the DNA collection fee was improper.

On remand, the trial court must determine whether McLaughlin previously had a DNA sample collected. The burden is on the State to show that McLaughlin has not previously provided a DNA sample before the court may impose a DNA collection fee. *See State v. Houck*, 9 Wn. App. 2d 636, 651, 446 P.3d 646 (2019).

C. CRIME LABORATORY ANALYSIS FEE

The sentencing court ordered McLaughlin to pay a crime laboratory fee. RCW 43.43.690 governs the mandatory imposition of the crime laboratory fee. RCW 43.43.690(1) states,

> When an adult offender has been adjudged guilty of violating any criminal statute of this state and a crime laboratory analysis was performed by a state crime laboratory, in addition to any other disposition, penalty, or fine imposed, the court shall levy a crime laboratory analysis fee of one hundred dollars for each offense for which the person was convicted.

However, "[u]pon a verified petition by the person assessed the fee, the court may suspend payment of all or part of the fee if it finds that the person does not have the ability to pay the fee." RCW 43.43.690(1). Here, the record is silent as to whether McLaughlin has petitioned the trial court to suspend the crime laboratory fee. On remand, if McLaughlin submits a verified petition, the trial court shall determine whether to impose the crime laboratory fee.

D. CRIME VICTIM PENALTY ASSESSMENT

The sentencing court also ordered McLaughlin to pay a crime victim penalty assessment. Indigency as defined in RCW 10.101.010(3)(a) through (c), is not grounds for failing to impose the crime victim penalty assessment under RCW 7.68.035. RCW 9.94A.760(1). Therefore, the victim penalty assessment remains a mandatory LFO. *State v. Catling*, 193 Wn.2d 252, 259, 438 P.3d 1174 (2019).

Additionally, receipt of disabled assistance benefits also does not relieve a defendant from the imposition of the crime victim penalty assessment. *Id.* at 264. However, the Social Security Act's antiattachment provision states that social security moneys cannot be reached to satisfy a debt. *Catling*, 193 Wn.2d at 264; 42 U.S.C. § 407(a). Therefore, the crime victim penalty assessment cannot be satisfied by funds subject to 42 U.S.C. § 407(a). *Catling*, 193 Wn.2d at 264-

No. 51026-0-II

65. Accordingly, we remand to the trial court to amend the judgment and sentence to reflect that the crime victim penalty assessment cannot be satisfied out of funds subject to 42 U.S.C. § 407(a).

CONCLUSION

We affirm the sentencing court's determination that McLaughlin's 1991 Ohio conviction of gross sexual imposition is factually comparable to the Washington crime of second degree child molestation. However, we reverse his sentence, and remand for resentencing using the correct offender score. On remand, we instruct the trial court to strike the criminal filing fee and amend McLaughlin's judgment and sentence to reflect that the victim penalty assessment cannot be satisfied from funds that are subject to 42 U.S.C. § 407(a). We further instruct the court to determine whether the State has already collected McLaughlin's DNA and if he submits a verified petition, to make an individualized inquiry into McLaughlin's ability to pay the crime laboratory fee. However, we affirm the crime victim penalty assessment.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

WORSWICK, J.

LEE, A.C.J.

13