IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Detention of | ) | |
| | ) | No. 38343-1-III |
| BRUCE AUSTIN, | ) | |
| | ) | |
| Appellant. | ) | UNPUBLISHED OPINION |

STAAB, J. — In 2011, Bruce Austin was convicted of first degree possession of depictions of minors engaged in sexually explicit conduct. In 2019, when Austin was about to be released from prison, the State filed a petition to have him civilly committed as a sexually violent predator (SVP). To meet its burden, the State had to prove that Austin had been "convicted of or charged with a crime of sexual violence." Former RCW 71.09.020(18) (2019).[1] The State argued that two of Austin's prior Alaska convictions from 1981 were legally and factually comparable to Washington offenses that qualified as "sexually violent offense[s]" under former RCW 71.09.020(17) (2019).

---

[1] Several statutes within chapter 71.09 RCW were amended, effective July 25, 2021. Citations to the statutes throughout this opinion refer to the statute in effect at the time of Austin's trial unless otherwise noted.

Austin argued that neither of his Alaska convictions were comparable to Washington's sexually violent offenses because both of the Alaska offenses encompassed more conduct than proscribed by the comparable Washington offenses. Specifically, he pointed out that the Washington offenses included an element of nonmarriage between the defendant and victim and neither of his Alaska convictions pleaded or proved an element of nonmarriage.

Additionally, Austin argued that his prior Alaska conviction for sexual abuse of a minor was not comparable to Washington's offense of indecent liberties against a child under age 14 because the Washington offense requires proof of sexual gratification and his Alaska conviction neither pleaded nor proved this element.

The trial court found that the offenses were comparable because sexual gratification was implied under the Alaska statute and because non-marriage between Austin and his victim could be implied in both Alaska offenses given that neither Alaska nor Washington recognized same-sex marriages in 1981.

We agree that the trial court properly held that a non-marriage element could be properly implied in both Alaska offenses since it was legally impossible for the defendant to be married to his male victim at the time of his conviction. Since nonmarriage is the only legal difference between Austin's Alaska conviction for sexual assault in the first degree and Washington's qualifying offense of first degree statutory rape, the State has met its burden of proving that Austin had been previously convicted of or charged with a

2

sexually violent offense.  We therefore decline to consider whether the trial court

properly implied an element of sexual gratification into the Alaska offense of sexual

abuse of a minor.

## BACKGROUND

In 1981, Bruce Austin entered a no contest plea[2] to three Alaska offenses.  Two of

the three convictions are relevant here.  One conviction was for sexual abuse of a minor

under former AS 11.41.440(a)(2) (1980) (Count II) and another was for first degree

sexual assault under former AS 11.41.410(a)(3) (1980) (Count III).

Austin's no contest plea to the indictment, Count II, admitted:

> That on or about the period of March 1981 through May 19, 1981, at
> or near Anchorage, in the Third Judicial District, State of Alaska, Bruce
> Lawrence Austin, being 16 years of age or older, did unlawfully engage in
> sexual contact with J.L., age 8, by touching J.L.'s penis.
> All of which is a class C felony offense being contrary to and in
> violation of AS 11.41.440(a)(2) and against the peace and dignity of the
> State of Alaska.

Clerk's Papers (CP) at 502.  Austin's no contest plea to the indictment, Count III,

admitted:

> That on or about the period of March 1981 through May 19, 1981, at
> or near Anchorage, in the Third Judicial District, State of Alaska, Bruce

---

[2] "[A] plea of no contest 'is an admission of every essential element of the offense
well-pleaded in the charg[ing] [document].'"  *Jones v. State*, 215 P.3d 1091, 1238
(Alaska App. 2009) (quoting *Scott v. State*, 928 P.2d 1234 (Alaska App. 1996)).

> Lawrence Austin, being 16 years of age or older, did unlawfully engage in sexual penetration with J.L., age 8, by inserting J.L.'s penis into his mouth.
> All of which is a class A felony offense being contrary to and in violation of AS 11.41.410(a)(3) and against the peace and dignity of the State of Alaska.

CP at 502-03.

Austin later moved to Cheney, and in 2010, he befriended at least five neighborhood children between the ages of eight and thirteen. Austin invited the children over to watch movies, took them to church, and went camping with them. Shortly thereafter, Austin was charged with rape of a child in the first degree, child molestation in the first degree, and two counts of possession of depictions of minor engaged in sexually explicit conduct, all stemming from his contact with two children. Austin was acquitted of the rape and molestation charges, but was convicted of first degree possession of depictions of minor engaged in sexually explicit conduct.

In 2019, when Austin was about to be released from prison, the State petitioned to have him committed as an SVP under former RCW 71.09.020(18). The State's petition alleged that Austin's 1981 Alaska convictions for sexual assault of a minor and sexual assault in the first degree (four counts) constituted sexually violent offenses as defined in former RCW 71.09.020(17). Upon the State's motion, the trial court determined as a matter of law that both convictions qualified as sexually violent offenses and qualified as predicate offenses.

4

Following a bench trial, the court found that Austin was a sexually violent predator.[3] The court also concluded that the State proved beyond a reasonable doubt that Austin's Alaska convictions were comparable to sexually violent offenses listed in former RCW 71.09.020(17)(a)-(b). The court entered written findings and conclusions of law. The court also entered an order of commitment.

Austin appeals from the order of commitment. He raises two issues of statutory interpretation but his primary argument is that the trial court erred in finding his Alaska convictions were legally and factually comparable to predicate offenses considered sexually violent offenses under former RCW 71.09.020(17). We disagree and conclude that the trial court did not err in concluding that Austin's Alaska conviction for sexual assault in the first degree was legally and factually comparable to Washington's offense of statutory rape in the first degree under former RCW 9A.44.070. We therefore affirm.

ANALYSIS

1.     TEST FOR COMPARING OUT-OF-STATE OFFENSES TO WASHINGTON OFFENSES

The first issue we address is the test to be applied when comparing out-of-state convictions to Washington offenses within chapter 71.09 RCW. Austin argues that the wording used in former RCW 71.09.020(17) requires a more limited comparability test than the two-prong test applied for sentencing purposes. Austin contends that the statute

---

[3] The court determined pretrial that Austin committed a "recent overt act" as a matter of law. RCW 71.09.020(12). Austin does not contest this on appeal.

5

allows only for a legal comparability of out-of-state convictions to predicate offenses

identified in former RCW 71.09.020(17), and the court here erred by considering whether

the Alaska offenses were factually comparable. The State contends that Washington has

a long history of using the two-prong test for out-of-state conviction comparability under

the sentencing reform act of 1981, ch. 9.94A RCW, under ch. 71.09 RCW, and that

Austin's reading of the statute is contrary to the rules of statutory construction. We agree

with the State that the correct test is a two-prong legal and factual comparability test.

In Washington, a two-part test is traditionally used to determine comparability of

out-of-state convictions for purposes of sentencing under the sentencing reform act. *E.g.*,

*State v. Morley*, 134 Wn.2d 588, 605-06, 952 P.2d 167 (1998); *In re Pers. Restraint of*

*Lavery*, 154 Wn.2d 249, 255, 111 P.3d 837 (2005); *State v. Olsen*, 180 Wn.2d 468, 476,

325 P.3d 187 (2014). The two-part test consists of a legal and a factual inquiry. First, the

court looks to the elements of the crime and determines whether the elements of the out-

of-state criminal statute are "substantially similar" or narrower than the comparable

Washington statute. *Lavery*, 154 Wn.2d at 255. If the elements of the crimes are

"substantially similar," then the analysis stops there. *Id.* If, on the other hand, the

elements of the out-of-state conviction are broader than the Washington statute, the court

proceeds to the second part of the analysis, factual comparability. *Id.*

The factual comparability component allows courts to "look at the defendant's

conduct, as evidenced by the indictment or information, to determine if the conduct itself

would have violated a comparable Washington statute." *Id.* (citing *Morley*, 134 Wn.2d at 606). However, the "elements of the charged crime must remain the cornerstone of the comparison." *Id.* The court may consider "only facts that were admitted, stipulated to, or proved beyond a reasonable doubt" in conducting its factual inquiry. *Olsen*, 180 Wn.2d at 478.

At an SVP determination trial, there is one question for the fact finder: "Has the State proved, beyond a reasonable doubt, that the respondent is an SVP?" *In re Detention of Post*, 170 Wn.2d 302, 309, 241 P.3d 1234 (2010). In order to answer this question in the affirmative, the fact-finder must find three elements: "(1) that the respondent has been convicted of or charged with a crime of sexual violence, (2) that the respondent suffers from a mental abnormality or personality disorder, and (3) that such abnormality or disorder makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." *Id.* at 309-10 (citing former RCW 71.09.020(18)) (internal quotation marks omitted).

In this case, Austin disputes that the State has proved that he has been previously convicted of a crime of sexual violence.

> "Sexually violent offense" means an act committed on, before, or after July 1, 1990, that is: (a) An act defined in Title 9A RCW as rape in the first degree, rape in the second degree by forcible compulsion, rape of a child in the first or second degree, statutory rape in the first or second degree, indecent liberties by forcible compulsion, indecent liberties against a child under age fourteen, incest against a child under age fourteen, or child

> molestation in the first or second degree; (b) a felony offense in effect at any time prior to July 1, 1990, that is **comparable** to a sexually violent offense as defined in (a) of this subsection, or any federal or out-of-state conviction for a felony offense that under the laws of this state **would be** a sexually violent offense as defined in this subsection; (c) an act of murder in the first or second degree, assault in the first or second degree, assault of a child in the first or second degree, kidnapping in the first or second degree, burglary in the first degree, residential burglary, or unlawful imprisonment, which act, either at the time of sentencing for the offense or subsequently during civil commitment proceedings pursuant to this chapter, has been determined beyond a reasonable doubt to have been sexually motivated, as that term is defined in RCW 9.94A.030; or (d) an act as described in chapter 9A.28 RCW, that is an attempt, criminal solicitation, or criminal conspiracy to commit one of the felonies designated in (a), (b), or (c) of this subsection.

RCW 71.09.020(17) (emphasis added).

Austin contends that the use of the word "comparable" when referring to felonies prior to July 1, 1990, in contrast to the use of the words "would be" when referring to out-of-state offenses, demonstrates a legislative intent to use a stricter test when analyzing an out-of-state conviction's comparability. We disagree.

The meaning of a statute is a question of law, which we review de novo. *State v. Sweat*, 180 Wn.2d 156, 159, 322 P.3d 1213 (2014). In interpreting statutory provisions, the primary objective is to ascertain and give effect to the intent and purpose of the legislature in creating the statute. *State v. Watson*, 146 Wn.2d 947, 954, 51 P.3d 66 (2002). To determine legislative intent, we first look to the plain language of the statute. *Id*. If a statute is clear on its face, its meaning is to be derived from the plain language of

the statute alone. *Id.* If a statute is unambiguous after considering its plain meaning, our inquiry ends. *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010).

Austin contends that the phrase "would be" means something different than "comparable." He does not provide a plain-language analysis, but instead relies on the maxim of statutory construction: "where the legislature uses different language in the same statute, differing meanings are intended." *State v. Costich*, 152 Wn.2d 463, 475-76, 98 P.3d 795 (2004). Austin's reliance on this maxim fails because the plain language of the statute is unambiguous.

Here, the plain language of the statute requires courts to determine if out-of-state convictions "would be" considered a sexually violent offense under the statute. Since the term "would be" is not defined, we apply each word's ordinary dictionary definition. "Would" is defined as a word "used in auxiliary function in the conclusion of a conditional sentence to express a contingency or possibility." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2637 (1993). The definition of the verb "be" is "to constitute the same class as" or "to belong as an individual to the class of." *Id.* at 189. Thus, the phrase "would be" as used in the statute means the out-of-state conviction must constitute, or belong to the same class as, a sexually violent offense under former RCW 71.09.020(17).

The word "comparable" means "equivalent" or "similar" or "having enough like characteristics or qualities to make comparison appropriate." *Id.* at 461. Consequently, the word "comparable" as used in the statute means that the felony offense committed before July 1, 1990 must be sufficiently similar to allow comparison and it must be "equivalent" to a sexually violent offense in the statute. Given these definitions, we find that the statute is unambiguous; "would be" and "comparable" as used in the statute mean the same thing.

Even if we were to find the statute ambiguous, we still conclude that the well-defined two-part legal and factual comparability test should apply. If a statute is ambiguous, meaning it is subject to more than one reasonable interpretation, it is appropriate to resort to statutory construction, case law, and legislative history to discern the legislature's intent. *Jametsky v. Olsen*, 179 Wn.2d 756, 762, 317 P.3d 1003 (2014). "Unlikely, absurd or strained results are to be avoided." *Morris v. Baker*, 118 Wn.2d 133, 143, 821 P.2d 482 (1992) (citing *State v. Stannard*, 109 Wn.2d 29, 36, 742 P.2d 1244 (1987); *State v. Fjermstad*, 114 Wn.2d 828, 835, 791 P.2d 897 (1990)).

The purpose of Washington's civil commitment statute, is to provide treatment to the "small but extremely dangerous group of sexually violent predators" through civil involuntary confinement. Former RCW 71.09.010. By confining these individuals, the legislature intended to ensure that they "do not have access to potential victims." *Id*. Austin's reading of the statute would undermine the legislature's intent by treating

10

offenders who committed acts of sexual violence in other states differently from those who committed similar acts in Washington. There is no evidence that the legislature intended out-of-state offenses to be subjected to a stricter test for comparability.

The plain language of RCW 71.09.020(17) does not impose a stricter comparability test than the traditional two-step analysis currently employed in other circumstances. In determining whether out-of-state offenses qualify as a sexually violent offense, courts should continue to use the legal and factual comparability test.

2.    WHETHER "SEXUALLY VIOLENT OFFENSE" IS THE SAME AS "CRIME OF SEXUAL VIOLENCE."

In his second issue of statutory construction, Austin argues that the phrase "sexually violent offense" under RCW 71.09.020(17) has a different meaning than the term "crime of sexual violence" used in RCW 71.09.020(18). Similar to his previous argument, Austin contends that the use of two different phrases presumes two different meanings. The State argues that this court has already determined that the phrase "sexually violent offense" is synonymous with "crime of sexual violence."

Thirteen years ago, in *In re Detention of Coppin*, Division One of this court found, by applying principles of statutory interpretation, that the phrase "sexually violent offense" was synonymous with "crime of sexual violence." 157 Wn. App. 537, 553-54, 238 P.3d 1192 (2010), *review denied*, 170 Wn.2d 1025, 249 P.3d 181 (2011). The court stated that the "legislature expressly defined 'sexually violent offense' to include" those

11

offenses listed in the statute, including indecent liberties against a child under age 14 and statutory rape in the first degree. *Id.* at 553; RCW 71.09.020(17)(a). The court went on to state that "[g]iven this definition, it would be absurd to conclude that [offenses listed in RCW 71.09.020(17)(a) are] . . . not also . . . . crimes 'of sexual violence,' as the SVP definition requires." *Coppin*, 157 Wn. App. at 553.

Further, in *In re Detention of Taylor-Rose,* Division Two of this court followed *Coppin*. 199 Wn. App. 866, 401 P.3d 357 (2017), *review denied*, 189 Wn.2d 1039, 409 P.3d 1070 (2018). The offender, Taylor-Rose, argued that a "sexually violent offense." could not mean the same thing as a "crime of sexual violence." *Id.* at 875-76. The court reiterated that the *Coppin* court, under general principles of statutory interpretation, had already correctly concluded that the two phrases were synonymous. *Id.* at 876. Consequently, the court held that "[a] crime that is expressly listed in the definition of 'sexually violent offense' in RCW 71.09.020([17]) necessarily also qualifies as a 'crime of sexual violence.'" *Id.*

"The legislature 'is presumed to be aware of judicial interpretation of its enactments,' and where statutory language remains unchanged after a court decision the court will not overrule clear precedent interpreting the same statutory language." *State v. Blake*, 197 Wn.2d 170, 190, 481 P.3d 521 (2021) (quoting *Friends of Snowqualmie Valley v. King County Boundary Rev. Bd.*, 118 Wn.2d 488, 496, 825 P.2d 300 (1992) (internal quotation marks omitted). If the legislature disagreed with our conclusion that

12

the two terms were synonymous, they would have amended the statute to overrule

*Coppin*. Their failure to do so supports the holding in *Coppin*.

Austin urges this court to reject Division One and Two's holdings in *Coppin* and

*Taylor-Rose*. We see no reason to do so. Instead, we reaffirm that a crime expressly

listed in RCW 71.09.020(17) as a "sexually violent offense" necessarily qualifies as a

"crime of sexual violence."

3.    COMPARABILITY OF ALASKA CONVICTION FOR SEXUAL ASSAULT IN THE FIRST
      DEGREE AND STATUTORY RAPE IN THE FIRST DEGREE.

Austin argues that his Alaska conviction of sexual assault in the first degree

(former AS 11.41.410(a)(3) (1980)) was not comparable to Washington's statutory rape

in the first degree under former RCW 9A.44.070 (1981). He contends that Washington's

offense is legally narrower because it included an implied element that the defendant and

victim were not married. He contends that the Alaska conviction is not factually

comparable because the implied element of non-marriage was not admitted or proved for

the Alaska conviction. The State responds that it was legally impossible for the

defendant to be married to the eight-year-old male victim in Alaska in 1981. The

comparability of offenses is a question of law we review de novo. *State v. Jordan*, 180

Wn.2d 456, 460, 325 P.3d 181 (2014).

Washington's statutory rape in the first degree statute (former RCW 9A.44.070

(1981)) is considered a "sexually violent offense" under RCW 71.09.020(17). At trial the

13

State sought to prove that this offense was comparable to Austin's Alaska conviction for sexual assault in the first degree (former AS 11.41.410(a)(3) (1980)).

Former AS 11.41.410(a)(3) (1980) stated, in relevant part: "(a) A person commits the crime of sexual assault in the first degree if . . . (3) being 16 years of age or older, he engages in sexual penetration with another person under 13 years of age." In comparison, in 1981 Washington's statutory rape in the first degree provided that "[a] person over thirteen years of age is guilty of statutory rape in the first degree when the person engages in sexual intercourse with another person who is less than eleven years old." Former RCW 9A.44.070(1) (1981). Since the Alaska statute criminalizes more conduct than Washington's comparable statute, the elements are not legally comparable. *State v. Stockwell*, 159 Wn.2d 394, 397, 150 P.3d 82 (2007).

The State conceded and the court found that the two statutes were not legally comparable. Consequently, the superior court moved on to the factual component of the two-part comparability analysis. The court then "looked at Mr. Austin's conduct at the time the offenses occurred to determine whether his conduct under the Washington law, as [it] existed at the time, constituted a sexually violent offense." CP at 538.

Austin entered a no contest plea to the indictment, Count III, admitting:

> That on or about the period of March 1981 through May 19, 1981, at or near Anchorage, in the Third Judicial District, State of Alaska, Bruce Lawrence Austin, being 16 years of age or older, did unlawfully engage in sexual penetration with J.L., age 8, by inserting J.L.'s penis into his mouth.

14

> All of which is a class A felony offense being contrary to and in violation of AS 11.41.410(a)(3) and against the peace and dignity of the State of Alaska.

CP at 502-03. Here, Austin's placing of J.L.'s penis in his mouth constituted sexual penetration under Washington law. RCW 9A.44.010(1)(a), (c) (1981 version).[4] Further, J.L. was eight years old at the time while Austin's date of birth on the indictment and judgment showed he was twenty-five years old. Consequently, "look[ing] at the defendant's conduct, as evidenced by the indictment or information," the elements of former RCW 9A.44.080 (1981 version), statutory rape in the first degree, were satisfied aside from the implied marital status element. *Lavery*, 154 Wn.2d at 255 (citing *Morley*, 134 Wn.2d at 606). Austin does not appeal this finding by the superior court.

Washington's first degree statutory rape offense also includes an element of nonmarriage that was read into the statute by the court in 2007. In *Stockwell*, the court was comparing Washington's more current offense of first degree rape of a child with the former offense of first degree statutory rape. The court noted that the two offenses were

---

[4] Washington defined "sexual intercourse" to include "any penetration, however slight, and . . . . any act of sexual contact between persons involving the sex organs of one person and the mouth or anus of another whether such persons are of the same or opposite sex." RCW 9A.44.010(1)(a), (c). "Sexual contact" "means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party." RCW 9A.44.100(2) (1981 version).

not identical because the more current offense of rape of a child had an express element of nonmarriage that the statutory rape charge did not include. *Stockwell*, 159 Wn.2d at 397-98. The defendant made the same argument in *Stockwell* that Austin makes here: since nonmarriage was not an element of the older offense and since it was not admitted in the plea of the older offense, the two offenses were not comparable.

> The Supreme Court disagreed and cited Division Two's reasoning:

> "[T]he Legislature cannot possibly have contemplated statutory rape in the first degree [as] being perpetrated on one's spouse. In the unlikely event that a child of 10 years [old] or less establishes sufficient necessity to receive permission from the superior court to marry, it is inconceivable that the Legislature intended to criminalize consensual sexual intercourse between spouses, regardless of their ages. The fact that the Legislature did not expressly make nonmarriage an element of first degree statutory rape can lead to only one logical conclusion: the Legislature did not expect that children under the age of 10 would be marrying. Therefore, the only plausible reading of former RCW 9A.44.070 is to consider nonmarriage an implicit element of the crime."

*Id*. (quoting *State v. Bailey*, 52 Wn. App. 42, 46, 757 P.2d 541 (1988), *aff'd on other grounds*, 114 Wn.2d 340, 787 P.2d 1378 (1990)).[5]

---

[5] As Austin points out, under statutory interpretation principles, judicial construction of a statute becomes a part of the statute as if it were part of the statute from its enactment. *Ino Ino, Inc. v. City of Bellevue*, 132 Wn.2d 103, 137, 937 P.2d 154 (1997).

16

In this case, as in *Stockwell*, accepting Austin's argument would lead to absurd results. Clearly in 1981, the Alaska Legislature did not expect an eight-year-old boy to be legally married to his 25-year-old male neighbor.

Austin contends that the court considered extrinsic evidence in finding that the implied non-marriage element of Washington's statutory rape statute was satisfied. The State argues that the court did not rely on extrinsic evidence and instead, properly inferred satisfaction of the non-marriage element based on the law and Austin's admissions in the indictment. We agree with the State and find that the Alaska offense is factually comparable to Washington's statute.

Austin relies on *In re Pers. Restraint of Crawford* to support his position that the marital element cannot be inferred. 150 Wn. App. 787, 209 P.3d 507 (2009). In that case, the court conducted the two-part legal and factual inquiry in comparing Crawford's Kentucky conviction of sexual abuse in the first degree to Washington's first degree child molestation statute (former RCW 9A.44.083 (1990)). *Id.* at 794-98. The crimes were not legally comparable because Washington's crime required that the victim not be married to the perpetrator while the foreign conviction did not. *Id.* at 796. Consequently, the court analyzed factual comparability of the offenses. *Id.* at 797. The State contended "that it was unaware of any jurisdiction in the United States that would allow a legal marriage between a 25-year-old male and a 7-year-old niece, but it acknowledged during oral argument before us that it had not researched or verified this to be true in Kentucky."

*Id.* at 798.  Consequently, the court held that the two crimes were not factually comparable.  *Id.*

Here, on the other hand, the State researched and argued at the hearing on its motion for comparability that in 1981, same-sex marriages were not legally recognized in either Alaska or Washington.  *See Singer v. Hara*, 11 Wn. App. 247, 522 P.2d 1187 (1974) (holding that Washington's marriage statute limited marriages to be between a man and a woman); *Andersen v. King County*, 158 Wn.2d 1, 138 P.3d 963 (2006) (DOMA's[6] prohibition against same-sex marriage did not violate the state Equal Rights Amendment); *Hamby v. Parnell*, 56 F.Supp.3d 1056 (D. Alaska 2014) (holding that Alaska's constitutional and statutory provisions prohibiting same-sex marriages violated fundamental rights under the U.S. and Alaska Constitutions).  It is clear from the indictment that Austin and his victim were both male.  Consequently, because same-sex marriage was not legal in either Washington or Alaska in 1981, and because the State researched and proved as much, Austin's argument that the marriage elements cannot be inferred fails.

Given that same-sex marriage was not recognized in either Alaska or Washington in 1981, the nonmarriage element and therefore factual comparability of the Alaska offense and the Washington statute was satisfied.

---

[6] Defense of Marriage Act.

18

Austin's Alaska conviction of sexual assault in the first degree (former AS 11.41.410(a)(3) (1980)) is comparable to statutory rape in the first degree in Washington (former RCW 9A.44.070 (1981)).

We affirm the trial court's order of commitment.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Fearing, C.J.

_____
Pennell, J.